WILLIAM MONACO *v.* TURBOMOTIVE, INC., ET AL.
(AC 20974)

Dranginis, Flynn and Daly, Js.

Argued September 26, 2001—officially released February 5, 2002

*Edwin L. Doernberger*, for the appellant (plaintiff).

*John-Henry M. Steele*, for the appellees (defendants).

*Opinion*

DRANGINIS, J. The plaintiff, William Monaco, appeals from the judgment of the trial court in favor of the defendants, Turbomotive, Inc., and H.R. Solutions, Inc. (HRS), rendered after a hearing in damages following the entry of a default against the defendants for failure to comply with the court's order regarding

62

discovery. On appeal, the plaintiff claims that the court improperly concluded that his claim was barred by General Statutes § 31-130 (i).[1] We reverse the judgment of the trial court.

The following facts and procedural history are necessary for our resolution of the plaintiff's appeal. William Young, a mechanical designer, engaged the plaintiff as his representative in seeking employment. The plaintiff contacted Turbomotive, Inc., on Young's behalf and arranged an interview. Thereafter, Young was hired by Turbomotive, Inc., and the plaintiff sent an invoice to Turbomotive, Inc., in the amount of $9540. When Turbomotive, Inc., failed to pay the amount due, the plaintiff commenced this action.

The plaintiff brought a five count complaint against the defendants. In the first and second counts, the plaintiff sought damages from Turbomotive, Inc., for breach of contract. In the third count, the plaintiff alleged that Turbomotive, Inc., paid the plaintiff's fee to HRS, a placement agency, thereby unjustly enriching HRS. In the fourth and fifth counts, the plaintiff alleged that the defendants conspired to deprive him of his fee, and that such action constitutes theft and thereby entitled him to treble damages.

Thereafter, the defendants filed an answer, special defenses and counterclaims. Turbomotive, Inc., denied the allegations and any obligation to pay the plaintiff,

---

[1] In the alternative, the plaintiff claims that the court abused its discretion in considering the evidence of his failure to comply with General Statutes § 31-130 (i) because the defendants did not provide sufficient notice of their intent to assert that defense at the hearing in damages pursuant to Practice Book § 17-34. Because of our conclusion, we need not consider that claim. We note, however, that, although Practice Book § 17-34 provides little guidance with respect to the sufficiency of a notice of intention to contradict, counsel should be mindful of the general rules of pleading to avoid unfair surprise and to promote the resolution of issues before the court. See, e.g., *Todd* v. *Glines*, 217 Conn. 1, 10, 583 A.2d 1287 (1991).

and claimed that the plaintiff's claims were barred by the doctrines of laches and unclean hands, the statute of limitations and payment to the party with which Turbomotive, Inc., had contracted, HRS. Turbomotive, Inc., filed counterclaims alleging vexatious litigation, tortious interference and unfair trade practices. HRS filed counterclaims alleging breach of contract, trademark infringement, unfair trade practices, conversion, vexatious litigation and tortious interference with business expectancy.

The plaintiff filed a motion for a default to be entered against the defendants for failure to comply with discovery. On August 31, 1999, the court ordered compliance by October 8, 1999. The defendants having failed to respond, the court granted the plaintiff's second motion for default on December 23, 1999.

Pursuant to Practice Book § 17-34 et seq., the defendants filed a notice of their intent to contradict "all proof of damages, the material allegations and subject matter of the plaintiff's complaint, the right of the plaintiff to maintain this action and provide evidence of defenses at any hearing in damages." It is well settled that the entry of default does not preclude the defendant from raising a defense at the hearing in damages. See Practice Book § 17-34. If timely written notice is furnished to the plaintiff, the defendant may offer evidence contradicting any allegation of the complaint. Id. The defendant may also challenge the right of the plaintiff to maintain the action or prove any matter of defense. Id. "If the defendant appears in the action and furnishes the required notice, the subsequent hearing in damages takes on the nature of a supplemental trial involving the determination of questions of law and fact, and the determination of the damages to be assessed after such trial." (Internal quotation marks omitted.) *DeBlasio* v. *Aetna Life & Casualty Co.*, 186 Conn. 398, 401, 441 A.2d 838 (1982).

In this case, at the hearing in damages, the court admitted evidence, over the plaintiff's objection, that the plaintiff was not a licensed employment agent as required by § 31-130 (i) at the time he rendered services to Turbomotive, Inc. The court took judicial notice of § 31-130 (i), which provides: "No person shall engage in the business of procuring or offering to procure employees for persons seeking the services of employees or supplying employees to render services where a fee or other valuable thing is exacted, charged or received from the employer for procuring or assisting to procure or supplying such employees unless he registers with the Labor Commissioner. . . ." The plaintiff, thereafter, testified that he was not registered with the commissioner of the department of labor as required by the statute, and the court concluded that pursuant to that statute, the plaintiff could not recover a fee. The court thereafter rendered judgment in favor of the defendants on all counts, and the plaintiff appealed. The plaintiff argues that the court abused its discretion when it considered evidence of the plaintiff's failure to comply with § 31-130 (i) at the hearing in damages. We reverse the judgment on the ground that the plaintiff's recovery was not barred by § 31-130 (i).

General Statutes § 52-163 provides that the courts shall take judicial notice of the special acts of this state. Judicial notice can be taken at any stage of the proceedings. *State* v. *Allen*, 205 Conn. 370, 382, 533 A.2d 559 (1987). "[A] trial court's determination not to take judicial notice is essentially an evidentiary ruling. . . . Our role in reviewing evidentiary rulings of the trial court is settled. The trial court has wide discretion in its rulings on evidence and its rulings will be reversed only if the court has abused its discretion or an injustice appears to have been done." (Internal quotation marks omitted.) *Barrese* v. *DeFillippo*, 45 Conn. App. 102, 107, 694 A.2d 797 (1997).

"Statutory construction is a question of law and therefore our review is plenary. . . . [O]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . As with any issue of statutory interpretation, our initial guide is the language of the operative statutory provisions." (Internal quotation marks omitted.) *O'Neil* v. *Honeywell, Inc.*, 66 Conn. App. 332, 336, 784 A.2d 428 (2001), cert. denied, 259 Conn. 914, 792 A.2d 852 (2002); see also 1 B. Holden & J. Daly, Connecticut Evidence (2d Ed. 1988) § 50, p. 222.

General Statutes § 31-129 (b) defines "employment agency" as "includ[ing] the business of procuring or offering to procure work or employment for persons seeking employment, or acting as agent for procuring such work or employment where a fee or other valuable thing is exacted, charged or received for procuring or assisting to procure employment, work or a situation of any kind or for procuring or providing help for any person . . . ." Significantly, however, No. 89-128 of the 1989 Public Acts exempts employment agencies from licensing and regulatory requirements if they receive their fees from *employers* rather than employees.

*Dorr-Oliver, Inc.* v. *Webster Computer Corp.*, 30 Conn. Sup. 544, 300 A.2d 45 (1972), provides further definition. In *Dorr-Oliver, Inc.*, the plaintiff employer brought an action to recover moneys that were paid to the defendant for the procurement of an employee. The plaintiff claimed that the defendant could not recover a fee because it was not licensed pursuant to § 31-130. Relying on cases from other jurisdictions that had similar statutory schemes, the court held that the defen-

dant did not fall within the definition of an "employment agency" under the statute because (1) no fee was paid from the employee to the defendant, (2) procuring employees was incidental to the defendant's main service of providing computer systems, (3) the defendant never solicited the public at large or advertised concerning employment placement and (4) the policy behind General Statutes §§ 31-129 to 31-131c is to protect individual applicants (prospective employees) from unscrupulous employment agencies. *Dorr-Oliver, Inc.* v. *Webster Computer Corp.*, supra, 550–51.

The reasoning of *Dorr-Oliver, Inc.*, although dated, is consistent with the statutory scheme today. Section 31-130 provides for the licensure of employment agencies and regulation of the conduct of their businesses. The legislative history indicates that agencies that collect their fees from employers do not present the kind of harm that is presented by agencies that collect their fees from prospective employees.[2] The provisions applicable to licensure, record keeping and scheduling of

[2] In a hearing on the proposed legislation, Howard Spector, of the Connecticut Association of Personnel Consultants, testified: "We've even addressed [in the amendment] the issue of loss of revenue to the state where it had been [a] concern in the past that if we were no longer licensed by the state that in the Labor Department certain revenues, approximately $50,000 or $60,000 would be lost, we have inserted in this bill a willingness to pay [a] registration fee to the same extent that we now pay for licensing so that there'd be no revenue loss." Conn. Joint Standing Committee Hearings, Labor and Public Employees, Pt. 2, 1989 Sess., p. 697.

"What this bill does is convert from a licensing to a registration scheme of those employment agencies that are not paid by the employees, but rather are paid by the employers. With that restriction that applies only to the employer fee paid situations. The current stricture and burdens of the statute are not necessary and this bill makes that adjustment." 32 S. Proc., Pt. 5, 1989 Sess., p. 1657, remarks of Senator James H. Maloney.

"[T]his bill exempts agencies whose sole business is to find employees for employers from licensing by the Department of Labor as an employment agency. Instead, the bill requires the agencies to register with the Department and pay an annual registration fee of $150, which is the same as the current licensing fee." 32 H.R. Proc., Pt. 10, 1989 Sess., p. 3230, remarks of Representative Joseph A. Adamo.

fees as well as enforcement penalties, therefore, apply only to those agencies that must be licensed. Although subsection (i) of § 31-130 still requires agencies that obtain their fees from employers to *register* with the labor commissioner and to pay an annual registration fee of $150, this is the same amount as the licensing fee and clearly is for the purpose of maintaining state revenues. See footnote 2. Furthermore, the legislature has shown that it knows how to draft legislation that bars recovery of a fee in the context of real estate commissions; General Statutes § 20-325a; and home improvement contracts. General Statutes § 20-429. Sections 31-129 to 31-133 do not contain such language. We will not read into the statute a provision barring recovery of a fee from an employer. See *Giaimo* v. *New Haven,* 257 Conn. 481, 494, 778 A.2d 33 (2001) ("[w]e are constrained to read a statute as written . . . and we may not read into clearly expressed legislation provisions which do not find expression in its words" [citation omitted; internal quotation marks omitted]).

In this case, it appears from the record that the employee did not pay a fee and the plaintiff did not solicit the public at large. Thus, under the reasoning of *Dorr-Oliver, Inc.,* and the plain language of the statute, we conclude that § 31-130 (i) does not bar the plaintiff's recovery from the defendants in this case. The evident purpose of the statutory scheme is to protect prospective employees, not employers, from the unscrupulous tactics of employment agencies.

We therefore conclude that in this case, the court abused its discretion when it took judicial notice of § 31-130 (i) at the hearing in damages because the statute does not bar the plaintiff's recovery.

The judgment is reversed and the case is remanded for a new hearing in damages consistent with this opinion.

In this opinion the other judges concurred.