SOUTHERN NEW ENGLAND TELEPHONE COMPANY
*v.* LAURIE J. PAGANO ET AL.
(AC 23115)

Foti, Dranginis and Bishop, Js.

Argued June 3—officially released September 16, 2003

*Louis A. Spadaccini*, for the appellants (defendants).

*Jeffrey M. Donofrio*, with whom was *A. Rachel Roth-man*, for the appellee (plaintiff).

*Opinion*

DRANGINIS, J. In this action for nonpayment of advertising fees, the defendants, Laurie J. Pagano and Richard E. Godek, both doing business as Middlesex Counseling Services, appeal from the judgment of the trial court, rendered after a jury trial, in favor of the plaintiff, Southern New England Telephone Company, on both the plaintiff's claim and on the defendants' counterclaims. On appeal, the defendants claim that the court improperly (1) admitted evidence that had a prejudicial effect that far outweighed its probative value and (2) directed a verdict against them on two counts of their counterclaims. We affirm the judgment of the trial court.

The relevant facts and procedural history are as follows. The plaintiff filed a two count complaint against the defendants on February 3, 1998. In count one, the

plaintiff set forth a claim for breach of contract. Specifically, the plaintiff alleged that the defendants had ordered telephone directory advertising for their counseling business from the plaintiff, that the plaintiff had published the defendants' advertisements and that the defendants had failed to pay the plaintiff for that advertising. In the alternative, in count two, the plaintiff set forth a claim for unjust enrichment in which it alleged that the defendants had benefited from the plaintiff's advertising services, but had failed to pay for those services.

In their answers, the defendants denied the allegations of the plaintiff's complaint.[1] The defendants also set forth claims for setoff in which they offered to set off any debt that the plaintiff owed to them against the debt, if any, that they owed to the plaintiff. Each defendant also set forth an identical five count counterclaim. Those counterclaims were as follows. In count one, they set forth a claim for breach of contract. In counts two and three, they set forth claims for intentional fraud and misrepresentation, and negligent misrepresentation, respectively. In count four, they set forth a claim for a violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq. Finally, in count five they set forth a claim for a breach of the duty of good faith and fair dealing. The plaintiff filed an answer denying the allegations set forth in the defendants' counterclaims and their claim for setoff.[2]

A jury trial commenced on January 9, 2002. Pagano testified during the defendants' case-in-chief. During direct examination, she testified that although the plaintiff had claimed that she and her husband, Godek, owed the plaintiff $25,800.52 for advertising services, they

[1] The defendants also filed six special defenses, none of which are relevant to this appeal.

[2] The plaintiff also filed three special defenses in response to each defendant's counterclaim. None of those defenses is relevant to this appeal.

had not ordered those services. She further testified that the plaintiff refused to allow her and Godek to place future business advertisements in its yellow page directory until they paid the balance that the plaintiff claimed was due. Finally, she testified that their inability to advertise their business in the plaintiff's yellow page directory negatively affected their business income for the years 1997 to 2001, inclusive. Specifically, she testified that they suffered $445,700 in lost business income for that period of time.

During cross-examination, counsel for the plaintiff questioned Pagano regarding her testimony that the defendants' business lost $445,700 in income. Again, Pagano testified that the plaintiff's refusal to allow them to advertise caused their business losses. Pagano further testified that because they could not advertise their business in the plaintiff's directory, they placed advertisements in newspapers that circulated in the same geographic area in which their business was located in an effort to continue to attract new business. She testified that one such newspaper was the Hartford Courant. The plaintiff's counsel then asked Pagano if the defendants' counseling business may have been affected by any adverse publicity in that newspaper. When Pagano stated that she did not know to what the plaintiff's counsel was referring, he showed her a number of newspaper articles that had been printed in the Hartford Courant.[3] Pagano testified that she previously had seen one of the articles. Counsel for the plaintiff then offered into evidence one article that Pagano had seen. That article, which was published on November 29, 2001, reported, inter alia, that Godek had been given a suspended sentence after he was arrested as a result of a foulmouthed outburst at a McDonald's restaurant in Plainville. The article stated that the incident at McDon-

---

[3] The articles were not the actual newspaper articles, but were computer printouts from the Hartford Courant's web site.

ald's occurred the previous year. The article further reported that in the fall of 1999, Godek had worked as a school psychologist in Southington, where his duties included counseling students on anger management, but that he had resigned from that position after his employer confronted him with his arrest record.

Counsel for the defendants objected to the article's being admitted into evidence on the ground that its probative value was outweighed by its prejudicial effect.[4] Counsel for the plaintiff argued that the article was admissible because it was highly probative of Pagano's credibility regarding her testimony that the defendants' business losses, which served as the bases for several of the defendants' counterclaims, were due to the plaintiff's refusal to allow the defendants to place any future advertisements until they paid the balance that the plaintiff claimed was due.

The court allowed the article to be admitted. At that time, however, the court instructed the jury: "This particular exhibit can only be used for the purpose of impeaching the credibility of the witness in the statements made concerning the loss of income to the business enterprise. That's the only thing this can be used for."[5] Furthermore, before the article was published to the jury, the court redacted a portion of the article. The redacted article, however, still contained the information regarding Godek's arrest record, his resignation from his position with the school in Southington and the incident at the McDonald's restaurant.

[4] Counsel for the defendants also objected to the admission of the article on the grounds of relevance and hearsay. The defendants' claim on appeal, however, is limited to whether the court abused its discretion in admitting the article on the ground that its probative value outweighed its prejudicial effect.

[5] We also note that in its charge to the jury at the conclusion of the case, the court instructed the jury that its verdict must not be reached on the basis of prejudice in favor of or against any party.

At the conclusion of the defendants' case-in-chief, the plaintiff requested a directed verdict on all five counts of each defendant's counterclaim. After hearing extensive argument, the court reserved judgment on the plaintiff's motion. Two days later, after the close of all of the evidence, the court granted in part the plaintiff's motion for a directed verdict on the defendants' counterclaims. Specifically, the court directed a verdict as to count one, which alleged breach of contract, and count five, which alleged breach of the covenant of good faith and fair dealing. After counsel presented closing argument and the court presented its charge, the case was submitted to the jury.

On January 18, 2002, the jury returned a verdict in favor of the plaintiff and against both of the defendants on the plaintiff's breach of contract claim. The jury also returned a verdict in favor of the plaintiff and against the defendants on all of the defendants' remaining counterclaims and their claim for setoff. This appeal followed. Additional facts will be set forth as necessary.

I

The defendants first claim that the court improperly admitted the Hartford Courant article because the article's prejudicial effect far outweighed its probative value.[6] We disagree.

---

[6] The defendants also claim on appeal that the court abused its discretion in admitting the evidence at issue here on the ground of unfair surprise. That claim was not, however, raised before the trial court at the time that the defendants objected to the admission of the article. "Appellate review of evidentiary rulings is ordinarily limited to the specific legal [ground] raised by the objection of trial counsel." (Internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 556, 821 A.2d 247 (2003). Accordingly, we decline to review the defendants' claim that the article should have been excluded on the ground of unfair surprise. To the extent that the defendants claim that the court abused its discretion in denying their motion for sanctions on the ground that the plaintiff had failed before trial to mark the article as an exhibit in violation of the standing order of the chief administrative judge of the civil division, we conclude that the court did not abuse its discretion in denying the motion for sanctions. See *Allstate Ins. Co.* v. *Mottolese*, 261 Conn. 521, 528–29, 803 A.2d 311 (2002) (standard of review

At the outset, we note our well established standard of review regarding the evidentiary rulings of the court. "[T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [Its] ruling on evidentiary matters will be overturned only upon a showing of a clear abuse of the court's discretion." (Internal quotation marks omitted.) *State* v. *William B.*, 76 Conn. App. 730, 739, 822 A.2d 265, cert. denied, 264 Conn. 918, 828 A.2d 618 (2003).

"Although relevant, evidence may be excluded by the trial court if the court determines that the prejudicial effect of the evidence outweighs its probative value. . . . [T]he trial court's discretionary determination that the probative value of evidence is . . . outweighed by its prejudicial effect will not be disturbed on appeal unless a clear abuse of discretion is shown. . . . [B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates *undue* prejudice so that it threatens an injustice were it to be admitted. . . . [Accordingly] [t]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the [party against whom the evidence is offered] but whether it will improperly arouse the emotions of the jur[ors]." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Sandoval*, 263 Conn. 524, 544, 821 A.2d 247 (2003).

We recognize that evidence of Godek's prior arrest carried some risk of prejudice. We conclude, however, that the court properly determined that the probative value of the evidence outweighed any prejudicial effect it may have had on the defendants' case. The newspaper

regarding court's decision to impose sanctions is abuse of discretion standard).

article was highly probative of the fact that some of the losses for portions of the period of the defendants' alleged losses may have been caused by the publicity surrounding Godek's conduct during that period rather than by the plaintiff's refusal to allow the defendants to advertise their business in its directory, as Pagano testified. Any prejudice suffered by the defendants was not "unfair prejudice" in that it did not tend "to have some adverse effect upon [the defendants] beyond tending to prove the fact or issue that justified its admission into evidence"; (internal quotation marks omitted) *State v. Graham*, 200 Conn. 9, 12, 509 A.2d 493 (1986); namely, that the defendants' alleged losses were caused by other factors.

Furthermore, any possible prejudice to the defendants was minimized by the fact that the court redacted portions of the article before publishing it to the jury and the fact that the court instructed the jury that the article could be used only for the limited purpose of impeaching Pagano's testimony regarding the defendants' alleged loss of business income. Accordingly, we cannot conclude that the court abused its discretion in determining that the Hartford Courant article should be admitted because its probative value outweighed its prejudicial effect.

II

The defendants next claim that the court improperly directed a verdict as to two counts of each of their counterclaims after it previously had reserved decision on that issue. Specifically, the defendants seem to claim that pursuant to Practice Book § 16-37, if the court does not immediately either grant or deny a motion for a directed verdict, but instead reserves decision on that motion, the court is deemed to have submitted the action to the jury and, in effect, to have deferred a

decision on the matter until after the jury has returned with a verdict. That claim is wholly without merit.

Practice Book § 16-37 provides in relevant part: *"Whenever a motion for a directed verdict made at any time after the close of the plaintiff's case in chief is denied or for any reason is not granted,* the judicial authority is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . ." (Emphasis added.)

Under the defendants' reading of Practice Book § 16-37, a court may not delay its decision on a motion for a directed verdict for any length of time, but instead must either immediately deny or immediately grant the motion. If it fails to do so, the court is deemed to have reserved decision on the motion until after the jury reaches a verdict, and the court, therefore, is deemed to have submitted the action to the jury. We decline to read into Practice Book § 16-37 a prohibition that it does not contain, namely, that the court is prohibited from reserving decision on a motion for a directed verdict until the close of all the evidence. See *Miller's Pond Co., LLC* v. *Rocque,* 71 Conn. App. 395, 408, 802 A.2d 184 (2002) (we cannot read into statute provision that does not exist), aff'd, 263 Conn. 692, 822 A.2d 238 (2003); *Monaco* v. *Turbomotive, Inc.,* 68 Conn. App. 61, 67, 789 A.2d 1099 (2002) (same).

As we read Practice Book § 16-37, the court is deemed to have submitted the action to the jury only when a party's motion for a directed verdict is either expressly denied or impliedly denied, that is, when the court declines to rule on the motion for a directed verdict before the parties have presented their closing arguments and the case is then actually submitted to the jury. See *Haag* v. *Beard Sand & Gravel Co., Inc.,* 151 Conn. 125, 127, 193 A.2d 711 (1963). In the present case,

the court granted the plaintiff's motion for a directed verdict as to counts one and five of the defendants' counterclaims at the close of evidence, before the start of closing argument and before the case was actually submitted to the jury. Therefore, the plaintiff's motion was not "denied," and it was not "for any reason . . . not granted," as provided by Practice Book § 16-37. The motion was, in fact, granted as to counts one and five of the defendants' counterclaims. Accordingly, the court could not be deemed to have submitted those counts to the action of the jury.

The judgment is affirmed.

In this opinion the other judges concurred.