THE BANK OF NEW YORK, TRUSTEE *v.* NATIONAL FUNDING ET AL.
(AC 26195)

McLachlan, Lavine and Pellegrino, Js.

Argued May 2—officially released August 15, 2006

*Mostafa Reyad,* pro se, the appellant (defendant).

*Geoffrey K. Milne,* for the appellee (plaintiff).

### Opinion

McLACHLAN, J. The defendant Mostafa Reyad[1] appeals from the judgment of the trial court, following a hearing in damages, awarding the plaintiff, The Bank of New York, trustee, the sum of $897,453, plus interest and costs. The defendant claims that the court improperly (1) determined that the plaintiff had standing to bring this action, (2) deprived him of his due process rights by not allowing him to present defenses as to liability and (3) concluded that he was negligent as alleged in the complaint. We affirm the judgment of the trial court.

---

[1] This action was brought against National Funding; National Funding Mortgage Banker; The Mortgage People, LLC; Federal Mortgage of Connecticut, Inc.; Mostafa Reyad & Companies; Mostafa Reyad; Joseph R. Grassi, Jr.; Vincent A. Liberti, Jr.; and Douglas Milan. The plaintiff did not proceed against The Mortgage People, LLC, withdrew its complaint as to Federal Mortgage of Connecticut, Inc., prior to trial and withdrew its complaint as to Milan at trial. The court dismissed the action as to Grassi and Liberti prior to trial. The court rendered judgment against the remaining defendants on January 21, 2005. Mostafa Reyad is the only defendant to appeal from that judgment, and he is referred to as the defendant in this opinion.

This case is one of several actions, arising out of the same transaction, which had been transferred to the complex litigation docket in the judicial district of Waterbury for management and trial. The defendant, who was licensed as a mortgage lender in Connecticut in August, 1998, operated several businesses under various trade names and obtained money from other sources to write loans that were then assigned to the providers of those funds. On August 31, 1998, Eugene Chimblo borrowed $1.65 million from National Funding, one of the defendant's companies, and executed two notes and two mortgages to secure those notes in favor of National Funding on property at 993 Lake Avenue in Greenwich. The subject notes and mortgages were assigned to the plaintiff. Chimblo defaulted after a few payments, and the plaintiff sought a strict foreclosure of the first mortgage and money damages in connection with the second mortgage. The court in that action granted the relief requested. The value of the property foreclosed was significantly less than the $1.65 million loaned to Chimblo.

Prior to the closing of the transaction, the defendant issued a loan commitment to Chimblo that provided for a loan to value ratio of 60 percent. The underwriting transmittal summary indicated that the value of the Greenwich property was $2.75 million and gave the appraised value as $2.75 million, and also provided for a loan to value ratio of 60 percent. That appraisal had been prepared for Gerhard Hutter, the seller of the Greenwich property to Chimblo, in connection with a different proposed transaction. The defendant authorized it to be "re-certified" to National Lending instead of requiring an independent appraisal.

The present action was brought against the defendant and his companies for negligence and violation of the Connecticut Unfair Trade Practices Act (CUTPA)[2] in

---

[2] General Statutes § 42-110a et seq.

connection with the preparation and closing of the two notes and mortgages executed by Chimblo and assigned to the plaintiff. It was alleged, inter alia, that the closing statements did not reflect accurately the terms of the actual transaction, that the actual loan to value ratio of the transaction was inconsistent with the underwriting guidelines and violated the lending criteria of the provider of the funds, and that the defendant failed to provide accurate information for the closing and sale of the loans. The defendant filed an answer without special defenses.

In September, 2003, the plaintiff served discovery requests on the defendant. On December 3, 2003, the plaintiff filed a motion to compel responses, which was granted by the court on January 5, 2004, requiring compliance by February 6, 2004. On February 9, 2004, the plaintiff moved to default the defendant for failure to comply with the court-ordered discovery, which was granted by the court on May 6, 2004. The defendant moved to open the default on May 13, 2004. The court denied that motion at a hearing held on July 12, 2004, concluding that the defendant did not show "good cause" as required by Practice Book § 17-42.[3] At that time, the court explained to the defendant, who was and is proceeding pro se, that a hearing in damages would be scheduled at which time he could dispute the amount of the damages but not contest liability.[4] The defendant then filed a notice of defenses on July 20, 2004.

---

[3] Practice Book § 17-42 provides in relevant part: "A motion to set aside a default where no judgment has been rendered may be granted by the judicial authority for good cause shown upon such terms as it may impose. . . ."

[4] The court stated: "So, there will be a hearing in damages at which time you can dispute the damages, but not the liability because you've been defaulted. You may offer evidence that goes to damages, and if you have special defenses that you have already filed and already pleaded, you can argue those at the time of the hearing in damages if they are relevant to damages. If they are relevant to liability, they are inappropriate."

The matter proceeded to a hearing in damages on October 26, 2004. The plaintiff presented witnesses and submitted exhibits. The defendant cross-examined the plaintiff's witnesses and submitted one exhibit, a notice of underwriting review. The defendant called one witness to testify on the issue of damages, but the court would not permit him to call witnesses to testify on the issue of liability.

The court issued its memorandum of decision on January 21, 2005, rendering judgment in favor of the plaintiff in the amount of $897,453, plus interest and costs. In that decision, the court concluded that the defendant's actions constituted negligence and caused harm to the plaintiff, as alleged in the complaint. Further, the court concluded that the defendant made material and deceptive misrepresentations and awarded CUTPA damages. With respect to the defendant's claims, the court found them to be "untimely and unpersuasive," and specifically stated that his notice of defenses was not timely filed. Nevertheless, the court briefly addressed those defenses in its decision before rendering judgment in favor of the plaintiff. This appeal followed.

None of the defendant's issues on appeal address the award of damages.[5] The defendant attempts to raise issues that had been raised in various motions prior to the hearing in damages, which already had been addressed by the court, or raises issues directed to

---

[5] The defendant's six issues are stated as follows: "1. Plaintiff has no viable complaint. . . . 2. The [t]rial [c]ourt denied [d]efendant due process. . . . 3. Plaintiff lacks standing. . . . 4. Plaintiff's claims are precluded by res judicata application. . . . 5. Plaintiff's CUTPA claims are voided. . . . 6. The trial court miscalculated negligence."

Even given the latitude normally afforded pro se litigants; *Wasilewski* v. *Machuga*, 92 Conn. App. 341, 342, 885 A.2d 216 (2005); a thorough review of the claims themselves apart from the defendant's characterization or statement of the claims reveals that none of those claims are cognizable as proper defenses on the issue of damages.

liability. At least one of his issues on appeal, challenging the "viability" of the plaintiff's operative complaint, was not raised at the trial court level and is raised for the first time before this court.[6] Because the defendant was defaulted and did not file a timely notice of defenses, none of the issues raised on appeal are properly before us.

The defendant does not dispute that the default entered against him on May 6, 2004. In his motion to open the default, the defendant did not claim that he failed to receive notice of that default, nor did he state that there was good cause for opening the default. The court denied his motion on July 12, 2004. After that denial, the defendant filed a notice of defenses on July 20, 2004. No previous notice of defenses had been filed, and it is clear from the record that the defendant had not filed special defenses to the operative complaint.

"A default admits the material facts that constitute a cause of action . . . *and entry of default, when appropriately made, conclusively determines the liability of a defendant. . . .* If the allegations of the plaintiff's complaint are sufficient on their face to make out a valid claim for the relief requested, the plaintiff, on the entry of a default against the defendant, need not offer evidence to support those allegations. . . . Therefore, the only issue before the court following a default is the determination of damages. . . . A plaintiff ordinarily is entitled to at least nominal damages following an entry of default against a defendant in a legal action. . . .

---

[6] "[W]e will not decide an appeal on an issue that was not raised before the trial court. . . . To review claims articulated for the first time on appeal and not raised before the trial court would be nothing more than a trial by ambuscade of the trial judge." (Internal quotation marks omitted.) *McCann Real Equities Series XXII, LLC* v. *David McDermott Chevrolet, Inc.*, 93 Conn. App. 486, 527, 890 A.2d 140, cert. denied, 277 Conn. 928, 895 A.2d 798 (2006).

"In an action at law, the rule is that the entry of a default operates as a confession by the defaulted defendant of the truth of the material facts alleged in the complaint which are essential to entitle the plaintiff to some of the relief prayed. It is not the equivalent of an admission of all of the facts pleaded. The limit of its effect is to preclude the defaulted defendant from making any further defense and to permit the entry of a judgment against him on the theory that he has admitted such of the facts alleged in the complaint as are essential to such a judgment. It does not follow that the plaintiff is entitled to a judgment for the full amount of the relief claimed. The plaintiff must still prove how much of the judgment prayed for in the complaint he is entitled to receive." (Emphasis in original; internal quotation marks omitted.) *Catalina* v. *Nicolelli,* 90 Conn. App. 219, 221, 876 A.2d 588 (2005).

"[T]he entry of default [however] does not preclude the defendant from raising a defense at the hearing in damages. See Practice Book § 17-34.[7] If timely written notice is furnished to the plaintiff, the defendant may offer evidence contradicting any allegation of the complaint. [Practice Book § 17-34]. The defendant may also challenge the right of the plaintiff to maintain the action or prove any matter of defense. [Practice Book § 17-34]. If the defendant appears in the action and furnishes the required notice, the subsequent hearing in damages takes on the nature of a supplemental trial involving

---

[7] Practice Book § 17-34 (a) provides: "In any hearing in damages upon default, the defendant shall not be permitted to offer evidence to contradict any allegations in the plaintiff's complaint, except such as relate to the amount of damages, unless notice has been given to the plaintiff of the intention to contradict such allegations and of the subject matter which the defendant intends to contradict, nor shall the defendant be permitted to deny the right of the plaintiff to maintain such action, nor shall the defendant be permitted to prove any matter of defense, unless written notice has been given to the plaintiff of the intention to deny such right or to prove such matter of defense."

the determination of questions of law and fact, and the determination of the damages to be assessed after such trial." (Internal quotation marks omitted.) *Monaco* v. *Turbomotive, Inc.*, 68 Conn. App. 61, 63, 789 A.2d 1099 (2002).

To be timely, notice must be given within the time period provided in Practice Book § 17-35.[8] Section 17-35 (b) clearly provides that a "notice of defenses must be filed within ten days after notice from the clerk to the defendant that a default has been entered." The court's docket sheets indicate that notice was sent May 6, 2004. The defendant's notice of defenses was filed July 20, 2004, well past the requisite ten day period. The defendant argues that the ten day period runs from the time of the court's denial of his motion to open default, which was July 12, 2004.

The defendant's argument is not persuasive, given the plain language of Practice Book § 17-35. "The rules of statutory construction apply with equal force to Practice Book rules." (Internal quotation marks omitted.) *Whalen* v. *Ives*, 37 Conn. App. 7, 11, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995). "A cardinal rule of statutory construction is that where the words of a statute [or rule] are plain and unambiguous the intent of the [drafters] in enacting the statute [or rule] is to be derived from the words used. . . . Where the court is provided with a clearly written rule, it need look no further for interpretive guidance." (Internal quotation marks omitted.) *Schiappa* v. *Ferrero*, 61 Conn. App. 876, 882, 767 A.2d 785 (2001). "We are constrained to read a statute as written . . . and we may

---

[8] Practice Book § 17-35 provides: "(a) The notices required by Section 17-34 shall be given in the manner provided in Sections 10-12 through 10-14, the original with proof of service being filed with the clerk.

"(b) In all actions in which there may be a hearing in damages, notice of defenses must be filed within ten days after notice from the clerk to the defendant that a default has been entered."

not read into clearly expressed legislation provisions which do not find expression in its words . . . ." (Internal quotation marks omitted.) *Urbanowicz* v. *Planning & Zoning Commission*, 87 Conn. App. 277, 289, 865 A.2d 474 (2005).

According to Practice Book § 17-35 (b), the defendant was required to file a notice of defenses within ten days after notice of default from the clerk. His interpretation, i.e., that he had ten days from the denial of his motion to open default, simply is not supported by the plain language of the rule. Our case law is in accord.[9] In *Whalen* v. *Ives*, supra, 37 Conn. App. 19–20, the court specifically concluded that the ten day period for filing a notice of defenses began to run from the notice of the default and had expired before the defendant filed his motion to set aside the default. "A party who allows the ten day period from the notice of a default to expire without filing a notice of defenses does so at his peril. The defendant elected to appeal to the court's discretion pursuant to [Practice Book § 17-42] without filing a timely notice of defenses as a precaution in the event the court denied his motion to set aside the default." *Whalen* v. *Ives*, supra, 20.

Here, the defendant filed a motion to open the default, but did not file a notice of defenses within ten days after the notice of the entry of the default. Significantly, in claiming that his due process rights have been violated, he has not challenged the propriety of the court's decision in denying the motion to open the default for failure to demonstrate good cause. Instead of claiming that the court abused its discretion in denying that motion, he argues that he timely filed the notice and

---

[9] The defendant cites *DeBlasio* v. *Aetna Life & Casualty Co.*, 186 Conn. 398, 441 A.2d 838 (1982), in support of his position. Although our Supreme Court concluded that the notice of defenses in that case met the requirements of Practice Book § 17-34, the issue of the timeliness of the notice pursuant to Practice Book § 17-35 was not addressed.

improperly was precluded from proving those defenses at the hearing in damages. The denial of the motion to open the default, being unchallenged, must be deemed to be proper. The defendant, therefore, cannot prevail on his claim that the court improperly precluded him from presenting his defenses to liability when he failed to file a timely notice of defenses pursuant to Practice Book § 17-35.[10] See *Whalen* v. *Ives*, supra, 37 Conn. App. 20.

The judgment is affirmed.

In this opinion the other judges concurred.

[10] Nevertheless, the court addressed the defendant's defenses in its memorandum of decision filed January 21, 2005, although it was not necessary to do so. The analysis was thoughtful and concise, and this court will not undertake a separate review of those issues.