******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

LARRY PERCY *v.* LAMAR CENTRAL OUTDOOR, LLC
(AC 34960)

Lavine, Beach and Sullivan, Js.

*Argued October 11, 2013—officially released January 28, 2014*

(Appeal from Superior Court, judicial district of
Hartford, Housing Session, Oliver, J.)

*John B. Kennelly*, for the appellant (defendant).

*Donald E. Weisman*, for the appellee (plaintiff).

*Opinion*

SULLIVAN, J. The defendant, Lamar Central Outdoor, LLC, appeals from the judgment of the trial court, following a hearing in damages upon default, awarding the plaintiff, Larry Percy, $68,837.34 for injury to his property. The defendant claims that (1) the court abused its discretion and violated the defendant's due process rights by denying the defendant's motion to open judgment and motions for reconsideration, and (2) the court's damages award was excessive. We affirm the judgment of the trial court.

The following facts are set forth in the plaintiff's amended complaint. See *Mountainview Plaza Associates, Inc.* v. *World Wide Pet Supply, Inc.*, 76 Conn. App. 627, 632–34, 820 A.2d 1105 (2003) (consequence of default, court bound by factual allegations outlined in plaintiff's amended complaint). The plaintiff is the owner of Percy's Autobody Service, a business located at 247 Walnut Street, Hartford (property). On August, 31, 1998, Cornelius Percy, who at that time was the owner of the property and the business, entered into a lease with Patrick Media Group, Inc. Under the terms of the lease, Cornelius Percy leased large billboard signs to Patrick Media Group, Inc., as well as the entire roof, walls and surrounding surface area of the building located on the property, for advertising purposes. On or about February 29, 2000, Cornelius Percy sold the property and business to the plaintiff, also assigning ownership of the lease to the plaintiff. Patrick Media Group, Inc., subsequently assigned the lease to Martin Media Group, Inc., who then assigned the lease to the defendant.

In February of 2008, the defendant's agents, servants, and/or employees leaned ladders against the canopy of the north side of the plaintiff's building in order to gain access to the building's roof and billboard. The ladders caused the canopy to crack, sag, and deteriorate, and caused the edge flashing to loosen. As a result of the loosening of the edge flashing, water entered the roofing and seeped down into the interior of the building, causing damage to the building's canopy, the roof, and the building itself.

The plaintiff brought this action for damages on October 26, 2009. On May 9, 2011, the court set a trial date of October 14, 2011. On October 13, 2011, the defendant filed a motion to dismiss and a motion for summary judgment, which led the court to postpone trial in order to address the jurisdictional issues raised in the motion to dismiss. The court denied the defendant's motion to dismiss on November 21, 2011, and the court denied the motion for summary judgment on January 6, 2012. On February 24, 2012, the defendant failed to appear at scheduled pretrial, notice having been sent on January 20, 2012. The plaintiff filed a motion for default

based upon this failure to appear at civil pretrial, which was denied by the court. On April 13, 2012, the defendant again failed to timely appear at scheduled pretrial, notice of which having been sent on March 23, 2012, instead arriving an hour late. On that date, the court granted the plaintiff's oral motion for default. The court denied the defendant's motion to open default and motion for reconsideration. The defendant filed a second motion for reconsideration, which the court also denied.

A hearing in damages was held before the court on June 6, 2012. On August 7, 2012, the court, in a written decision, rendered judgment for the plaintiff, and awarded the plaintiff $68,837.34 in damages. This appeal followed. Additional facts will be presented as necessary.

## I

The defendant first claims that the court abused its discretion and violated the defendant's due process rights by denying the its motion to open default and motions for reconsideration. Specifically, the defendant asserts that (1) it demonstrated good cause to set aside the default, pursuant to Practice Book § 17-42, and (2) it was denied due process of law because any issues of liability would not be considered as a result of the default. We are not persuaded.

In its corrected articulation, dated November 15, 2012, the court detailed that it denied the defendant's motion to open default, and subsequent motions for reconsideration, "[p]ursuant to the [c]ourt's authority pursuant to Practice Book §§ 14-12 et. seq. and § 17-42, based on the defendant's violation of scheduling orders, untimely filing of motions resulting in the delay of a long-scheduled trial, and for twice failing to appear for pre-trial conferences without good cause . . . ." The court noted in its articulation that "[t]he 'eve of trial' filings by the defendant required the [c]ourt to postpone the trial in order to address the jurisdictional issues in the [m]otion to [d]ismiss" and that "the plaintiff was trial-ready and had present in court his expert witness." The court also noted that, after the defendant's first failure to timely appear at civil pretrial, the court denied the plaintiff's subsequent motion for default "in an attempt to preserve the defendant's right to a fair hearing on the merits."

The court may set aside a default when no judgment has been rendered "for good cause shown upon such terms as it may impose." Practice Book § 17-42. "[T]he determination of whether to set aside [a] default is within the discretion of the trial court . . . and will not be disturbed unless that discretion has been abused or where injustice will result. In the exercise of its discretion, the trial court may consider not only the presence of mistake, accident, inadvertence, misfor-

tune or other reasonable cause . . . factors such as [t]he seriousness of the default, its duration, the reasons for it and the degree of contumacy involved . . . but also, the totality of the circumstances, including whether the delay has caused prejudice to the nondefaulting party." (Internal quotation marks omitted.) *Bohonnon Law Firm, LLC* v. *Baxter*, 131 Conn. App. 371, 381, 27 A.3d 384, cert. denied, 303 Conn. 902, 31 A.3d 1177 (2011).

The defendant argues that the court should have granted its motion to open because it sufficiently established that counsel's errors were the result of mistake and accident; specifically, that counsel for the defendant did appear for the April 13, 2012, rescheduled pretrial, "albeit an hour late," and that "late appearance does, in fact, constitute an appearance, and the mistake in time should serve as a defense against default." Further, counsel asserts that his perpetual tardiness did "not signify an unwillingness to enthusiastically litigate the pending case," and that "prior to the pretrial conference which was the reason for the default order, the defendant had attended previous pretrial conferences, had filed substantive motions for summary judgment and to dismiss, and had deposed the plaintiff. Additionally, on November [21] 2011, both parties were in court, ready to proceed with scheduled trial. On that date the defendant filed numerous motions in limine." As to his claim that the court improperly denied his motions for reconsideration, the defendant reasserts these same arguments.

Considering the totality of the circumstances, the court's determination that the defendant failed to establish good cause to set aside the default, pursuant to Practice Book § 17-42, was not an abuse of discretion. Counsel for the defendant exhibited a pattern of disregard for the court's orders and procedures. First, the defendant simultaneously filed a motion for summary judgment and a motion to dismiss on the eve of trial, in direct violation of Practice Book §§ 10-30 and 17-44, and the scheduling order issued by the court.[1] As articulated by the court, these filings impeded the operation of the court and the preparation of the plaintiff. Second, regardless of counsel's sincerity as to his mistake, he failed to timely appear at two scheduled pretrial conferences ordered by the court, to which notice of the date and time as to each had been sent more than one month prior. Third, after the court denied the plaintiff's first motion for default "in an attempt to preserve the defendant's right to a fair hearing on the merits," and counsel had notice of this leniency, counsel nevertheless failed to appear at the proper time for the rescheduled pretrial. See, e.g., *Automotive Twins, Inc.* v. *Klein*, 138 Conn. 28, 33, 82 A.2d 146 (1951) ("[Practice Book § 17-19] provides that a party who fails to comply with an order of the court may be defaulted. . . . The defendant's failure to appear for trial was a failure to

comply with an order of court and was ample cause for defaulting him.").

The record indicates that counsel for the defendant received notice of the date and time of both pretrial conferences but failed to appear at the first, and arrived an hour late to the second, due to counsel's own inattentiveness. "This court repeatedly has stated that negligence is an improper ground on which to set aside a default." *Sessa* v. *Province*, 98 Conn. App. 564, 566, 910 A.2d 992 (2006), cert. denied, 281 Conn. 912, 916 A.2d 51 (2007). As a result, the court's decision to not set aside the default was not an abuse of its discretion. Compare id. ("The record indicates that the defendants received notice of [the court's] orders regarding the mediation session and failed to comply with them. In light of the defendants' negligence, [the court] reasonably concluded that the defendants had failed to demonstrate good cause to set aside the default."), with *Patterson* v. *Travelers Casualty & Surety Co.*, 104 Conn. App. 824, 827, 936 A.2d 241 (2007) (defendant's failure to receive notice of date and time of pretrial conference constituted good cause for its nonappearance), cert. denied, 286 Conn. 920, 949 A.2d 481 (2008); see also *Barton* v. *Barton*, 123 Conn. 487, 489–91, 196 A. 141 (1937); *Bohonnon Law Firm, LLC* v. *Baxter*, supra, 131 Conn. App. 381–82.

The defendant also argues that the court's denials of its motion to open and motions for reconsideration were a denial of due process. Specifically, it alleges that, by denying its motions, the court limited the issues that the defendant could bring forth in the hearing in damages in that any issues of liability would not be considered, thereby denying the defendant due process of law.

The defendant's due process argument is unavailing. "After a default, a defendant may still contest liability. Practice Book §§ 17-34, 17-35 and 17-37 delineate a defendant's right to contest liability in a hearing in damages after default. Unless the defendant provides the plaintiff written notice of any defenses, the defendant is foreclosed from contesting liability. . . . If written notice is furnished to the plaintiff, the defendant may offer evidence contradicting any allegation of the complaint and may challenge the right of the plaintiff to maintain the action or prove any matter of defense. . . . This approximates what the defendant would have been able to do if he had filed an answer and special defenses." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Schwartz* v. *Milazzo*, 84 Conn. App. 175, 178–79, 852 A.2d 847, cert. denied, 271 Conn. 942, 861 A.2d 515 (2004); see also General Statutes § 52-221; *Bank of New York* v. *National Funding*, 97 Conn. App. 133, 139–40, 902 A.2d 1073, cert. denied, 280 Conn. 925, 908 A.2d 1087 (2006), cert. denied sub nom. *Reyad* v. *Bank of New York*, 549 U.S. 1265,

127 S. Ct. 1493, 167 L. Ed. 2d 229 (2007).

There is no indication in the record, and the defendant does not claim, that the court prevented the defendant from utilizing these available procedural remedies. "A party who allows the ten day period from the notice of default to expire without filing a notice of defenses does so at his peril." *Whalen* v. *Ives*, 37 Conn. App. 7, 20, 654 A.2d 798, cert. denied, 233 Conn. 905, 657 A.2d 645 (1995); see also Practice Book § 17-35 (b). The court did not limit the defendant's ability to be heard.

Accordingly, the court did not abuse its discretion and did not violate the defendant's due process rights by denying the defendant's motion to open judgment and subsequent motions for reconsideration.

II

The defendant also claims that the court's damages award was clearly erroneous. Specifically, the defendant argues that (1) there is no evidence to support the court's inclusion of the cost of a full new roof, $46,500, in its damages award of $68,837.74, and (2) the court's damages award is excessive because it places the plaintiff in a better position than he would have been had the defendant not been negligent. We are not persuaded.

The following additional facts are relevant to this claim. Following the default, and the court's denials of the defendant's motion to open and motions for reconsideration, the court took evidence on June 6, 2012, at a hearing in damages. At the hearing in damages, the court heard testimony from the plaintiff, along with James Fitzgerald, president of The State Awning Company, and James Hopkins, chief executive officer of Rite-Way Restoration and Roofing Specialist, LLC, who testified as to the damage to the overhang and the roof, respectively. The only evidence provided by the defendant was that which could be gleaned through cross-examination of these witnesses.

As to the issue of the extent of the damage to the roof, the plaintiff submitted as evidence a copy of the bid created in 2012 by Hopkins, which called for the replacement of the roof. Hopkins testified that this bid was nearly the same as one which he had created for the plaintiff in 2009, but that the 2012 bid was slightly higher to account for the increased cost of materials. Testimony from both the plaintiff and Hopkins established that a portion of the roof was repaired in 2011 after it caved in from the weight of snow, and that this repair was paid for by insurance. There was no evidence provided as to the cost of the 2011 repair to the roof, and there was no evidence provided as to the cost to replace the portion of the roof that was not repaired in 2011.

The defendant first argues that there was no testimony elicited from Hopkins that established that it was necessary to replace the entire roof; instead, Hopkins'

quote was created out of a desire to perform the job properly, and not necessity. The defendant also argues that the court's award was clearly erroneous because the court's determination that the entire roof now needs to be replaced is undermined by evidence that established that the roof had been repaired in 2011.

"We first set forth our standard of review with respect to damages. [T]he trial court has broad discretion in determining damages. . . . The determination of damages involves a question of fact that will not be overturned unless it is clearly erroneous. . . . [W]hether the decision of the trial court is clearly erroneous . . . involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. . . . In a case tried before a court, the trial judge is the sole arbiter of the credibility of the witness and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled. . . . A factual finding may be rejected by this court only if it is clearly erroneous. . . . A finding is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, 113 Conn. App. 509, 527–28, 967 A.2d 550, cert. denied, 292 Conn. 907, 973 A.2d 103 (2009). "Moreover, it is the exclusive province of the trier of fact to weigh the conflicting evidence, determine the credibility of witnesses and determine whether to accept some, all or none of a witness' testimony. . . . Thus, if the court's dispositive finding . . . was not clearly erroneous, then the judgment must be affirmed. . . . The function of the appellate court is to review, and not retry, the proceedings of the trial court." (Internal quotation marks omitted.) *Keith E. Simpson Associates, Inc.* v. *Ross*, 125 Conn. App. 539, 543, 9 A.3d 394 (2010).

Hopkins testified that to repair the roof he "would have to rip it . . . down to the tongue and groove. . . . [A]nything . . . can penetrate right through the roof, it's too heavy." The defendant first argues that Hopkins based his quote upon a desire to perform a thorough job, and not out of necessity. To support this argument, the defendant cites the portion of the transcript in which Hopkins responded, when prompted by counsel for the defendant to address whether the repairs in 2011 had any effect on his current quote, "Well when I go in to

do a job I don't go in and do it half, I go in and I take it all off because I'm doing it now."

On the other hand, although the defendant asserts throughout its brief that there was no testimony from Hopkins indicating that the entire roof needed to be replaced, this is inaccurate. Hopkins testified that the roof needed to be replaced because the damage to the canopy caused water to enter the roof's tongue and groove system and warp the boards.[2] Accordingly, there was evidence before the court that the damage to the canopy necessitated replacement of the entire roof.

The defendant also argues that, because the 2012 quote did not take into account the 2011 repairs, the court's reliance on the 2012 quote in its calculation of damages was clearly erroneous. We are not persuaded. The current cost of repair estimates can be evidence of the extent of earlier damage. See *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 60–61, 717 A.2d 77 (1998) ("In *Whitman Hotel Corp.* [v. *Elliot & Watrous Engineering Co.*, 137 Conn. 562, 573, 79 A.2d 591 (1951)], we rejected the argument that permitting recovery for the *actual cost* of repairs puts the plaintiff in a better position than it was in before the damage was done. . . . As we have stated, the cost of repairs is evidence of the diminution in value resulting from [the defendant's] actionable conduct. [E]xpenditure for repairs would restore the building of the plaintiff to its condition of usefulness prior to the [damage] . . . ." [Citation omitted; emphasis in original; internal quotation marks omitted.]); see also *Calderwood* v. *Bender*, 189 Conn. 580, 584–85, 457 A.2d 313 (1983) (holding that actual cost of repairing faulty septic system was proper measure of damages). Here, Hopkins submitted a quote in 2009 for a new roof, and Hopkins testified that, when making his quote in 2012, he witnessed the 2011 repairs, but that these repairs did not affect his quote. It is unclear from the defendant's brief why Hopkins testimony is evidence that the repairs in 2011 remedied the need to replace the roof in full; on the contrary, Hopkins testimony is evidence that the 2011 repairs did nothing to remedy the damage caused by water to the roof's tongue and groove system as a whole.

As his final argument, the defendant asserts that the court's inclusion of the cost of a new roof in its damages award is excessive because it places the plaintiff in a better position than he would have been had the defendant not been negligent. We disagree.

"In determining the proper measure for damages to land, the legal effort . . . is to compensate the landowner for the damage done. . . . This is essentially true whether the injury is redressed under a theory of tort or breach of contract. . . . The basic measure of damages for injury to real property is the resultant diminution in its value. . . . There is, however, a well

established exception to this formula; such diminution in value may be determined by the cost of repairing the damage, provided, of course, that that cost does not exceed the former value of the property and provided also that the repairs do not enhance the value of the property over what it was before it was damaged." (Citations omitted; internal quotation marks omitted.) *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 59; see also *Whitman Hotel Corp.* v. *Elliot & Watrous Engineering Co.*, supra, 137 Conn. 573.

Here, there was no evidence to indicate that the cost of replacing the full roof would exceed the purchase price of the property being repaired; see *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, supra, 245 Conn. 60; and there was no evidence that a new roof enhanced the value of the property over what it was before it was damaged. See *Whitman Hotel Corp.* v. *Elliot & Watrous Engineering Co.*, supra, 137 Conn. 573–74. Accordingly, we are not persuaded that the court's inclusion of the cost of a full roof in its measure of damages was an improper measure of the diminution of the value of the plaintiff's property that resulted from the defendant's negligence. See, e.g., *Centimark Corp.* v. *Village Manor Associates Ltd. Partnership*, supra, 113 Conn. App. 531–33. In consideration of this evidence, we are not left with a definite and firm conviction that a mistake has been made.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The parties agreed to file motions for summary judgment by January 14, 2011.

[2] The following colloquy occurred during the cross-examination and subsequent redirect examination of Hopkins.

"[The Defendant's Counsel]: [I]s the tongue and grove roofing failing due to the weight of the later roofing systems and the billboard, or because there's some water had gotten in? . . .

"[Hopkins]: [W]hen you disturb any part of the roofing system [in]which the awning [is] supposed to go underneath, you have to replace the whole thing. Because what he did was create a monster, because the water's going to keep on, like the wind blowing and the rain it go in through that hole and it will start, and once the water get in . . . it's a no brainer, it travels everywhere . . . . What it did throughout the years was got into that tongue and groove and the boards then got warped. So tongue and groove stick together like this, so now it's separating them and it's making an opening. . . .

"[The Defendant's Counsel]: And you had testified that . . . it was because the roof was too heavy?

"[Hopkins]: "Yes. But when I heard him talk about he messed with—whoever touched that awning, if it found an opening no telling where the water at. . . . [T]hat's what I say, because I know the system. . . .

"[The Plaintiff's Counsel]: Just to clarify this, you told me had there been no water damage the roof would not have to be replaced, is that correct?

"[Hopkins]: That's correct."