******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CYNTHIA E. NUZZI *v.* CARMINE NUZZI
(AC 36496)

Lavine, Sheldon and Mullins, Js.

*Argued January 11—officially released April 19, 2016*

(Appeal from Superior Court, judicial district of
Stamford-Norwalk, Tierney, J. [dissolution judgment];

S. Richards, J. [motion for modification, motion for contempt].)

*Kevin F. Collins*, for the appellant (defendant).

*Norman A. Roberts II*, with whom, on the brief, was *Anthony L. Cenatiempo*, for the appellee (plaintiff).

*Opinion*

LAVINE, J. This appeal presents us with "procedurally dysfunctional matrimonial litigation . . . ." *Grimm* v. *Grimm*, 276 Conn. 377, 379, 886 A.2d 391 (2005), cert. denied, 547 U.S. 1148, 126 S. Ct. 2296, 164 L. Ed. 2d 815 (2006). The defendant, Carmine Nuzzi, appeals from the judgment of the trial court in which the court denied his postdissolution motion to modify his unallocated alimony and child support obligation (unallocated support) to the plaintiff, Cynthia E. Nuzzi, and found him in contempt. On appeal, the defendant claims that the court abused its discretion by (1) denying his motion to modify his unallocated support order and (2) finding him in contempt. We affirm, in part, and reverse, in part, the judgment of the trial court.

The following procedural history provides the context for the issues in this appeal. The plaintiff commenced the underlying action for dissolution of her marriage to the defendant in January, 2006.[1] On June 13, 2007, following an uncontested hearing, the court, *Tierney, J.*, rendered a judgment of dissolution that incorporated the parties' separation agreement (agreement).[2] Almost immediately following the judgment of dissolution, the parties began filing postdissolution motions, which concerned their various nonsupport obligations, modification of the parenting plan, and other matters related to their then minor children.

On May 12, 2008, the defendant filed the subject motion to modify, which is number 173 on the trial court docket. In the motion to modify, the defendant recited §§ 8.3 and 8.4 of the agreement; see footnote 2 of this opinion; and petitioned "the court for relief from his alimony payments, and request[ed] the court to take a second and de novo look at the financial state of the parties, and set a revised order effective June 13, 2008, relative to alimony and/or child support."[3] On May 24, 2008, a state marshal served the plaintiff with a copy of the motion to modify and a notice and order to appear. The notice indicated a hearing on the motion to modify was to be held on June 23, 2008, at 9:30 a.m. The plaintiff did not file an objection to the motion to modify, but the hearing did not take place. The plaintiff instead initiated discovery as to the defendant's assets.[4] Although the motion to modify was not heard or ruled on by the court, the defendant unilaterally reduced his monthly payments to the plaintiff from $3000 per month to $1200 per month. Almost four years passed by.

On May 2, 2012, the parties appeared before the court, *Shay, J.*, at which time the court accepted the parties' stipulations as to certain moneys the plaintiff owed the defendant.[5] Motion to modify number 173 also appeared on the short calendar that day. Judge Shay inquired as to whether the motion to modify had been served in

order to consider whether any modification should apply retroactively.[6] Thereafter, confusion ensued.

Counsel for the parties were under the misapprehension that number 173 had been filed on behalf of the plaintiff by her prior counsel. After reviewing the file, however, Judge Shay informed the parties that number 173 was the defendant's motion to modify. Both counsel reviewed the court's file and learned that the plaintiff, in fact, never had filed a motion to modify the unallocated support order. Counsel who was then representing the plaintiff stated that she would be filing a motion for contempt against the defendant for his failure to pay the plaintiff unallocated support in accordance with the agreement.

The subsequent colloquy between the court and counsel focused on the general practice of family courts to hear motions to modify support and related motions for contempt simultaneously.[7] Although Judge Shay offered the defendant's counsel the opportunity to go forward with his motion to modify, counsel, after consulting with opposing counsel, elected not to proceed on the motion to modify that day. Judge Shay observed that the motion to modify was four years old and asked, "why should the court even entertain a four year old motion."

On May 3, 2012, the plaintiff filed a motion for contempt (number 207), alleging that the defendant had failed to pay her unallocated support in accordance with the agreement and had failed to provide her with the documents necessary to calculate his earned income. In her contempt motion, the plaintiff asked the court to find the defendant in contempt and order him to pay the cost of bringing the motion for contempt, including attorney's fees, to pay her the amount he owed her under § 8.1 of the agreement, and to provide her with monthly calculations and redacted 1099 forms.

The parties appeared before the court, *S. Richards, J.*, on March 5 and 6, 2013, for a hearing on the defendant's motion to modify and the plaintiff's motion for contempt. Following the hearing, each of the parties filed a memorandum of law. On October 1, 2013, Judge Richards issued a memorandum of decision in which she denied the defendant's motion to modify, granted the plaintiff's motion for contempt, and imposed sanctions on the defendant.[8] In sanctioning the defendant, the court ordered the defendant to pay the plaintiff $210,640.80, which represented the amount of alimony for which he was in arrears pursuant to § 8.1 of the agreement. The court also awarded the plaintiff reasonable attorney's fees and costs.[9] The defendant appealed.

"As a general matter, [a]n appellate court will not disturb a trial court's orders in domestic relations cases unless the court has abused its discretion or it is found that it could not reasonably conclude as it did, based

on the facts presented. . . . In determining whether a trial court has abused its broad discretion . . . we allow every reasonable presumption in favor of the correctness of its action." (Internal quotation marks omitted.) *Nassra* v. *Nassra*, 139 Conn. App. 661, 666, 56 A.3d 970 (2012).

I

The defendant first claims that the court improperly denied his motion to modify on the grounds of staleness and unclean hands. We agree. By denying the defendant a de novo hearing with regard to his unallocated support obligation, the court ignored the parties' agreement that was incorporated into the dissolution judgment, which required a de novo review of the defendant's support obligation at the end of a one year grace period.

The following additional facts and procedural history are relevant to our resolution of the defendant's claim. In the body of her memorandum of decision, Judge Richards began by summarizing §§ 8.1, 8.2, and 8.3 of the agreement, but not § 8.4.

The court found that on May 12, 2008, the defendant had filed a motion for modification of alimony, requesting a de novo hearing pursuant to the terms of the agreement. The defendant sought "either a termination of alimony and an order of child support or a downward modification of alimony with an order of child support along with a retroactive order." Also, the parties had appeared before Judge Shay in May, 2012, at which time Judge Shay informed the parties that motion number 173 on which the plaintiff intended to proceed was not her motion but the defendant's motion to modify. The following day, the plaintiff filed a motion for contempt.

Judge Richards ruled on the motion to modify pursuant to the plaintiff's contention that the motion was stale and, therefore, never addressed the merits of the motion to modify. In determining whether the motion to modify was stale, the court relied on Practice Book § 25-34 (e), which provides in relevant part: "Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing. . . ." "Whether a party has shown good cause in not pursuing a motion within the three month limitation is a question of fact for the trial court." *Larson* v. *Larson*, 89 Conn. App. 57, 69, 872 A.2d 912, cert. denied, 274 Conn. 915, 879 A.2d 892 (2005).

Although each party argued that the other was guilty of laches and unclean hands, the court concluded that the defendant had not met his burden of proving good cause for failing to secure a hearing on his motion to modify prior to March, 2013. Moreover, the court found that the defendant failed to offer specific evidence of the activities in which he actively had engaged with opposing counsel in pursuit of having the motion to

modify heard. The court also found that, although the defendant argued that §§ 8.1 and 8.3 of the agreement are ambiguous, he testified that he was aware of his obligations pursuant to the judgment of dissolution and that despite having filed the motion to modify, he unilaterally had reduced the amount of his monthly payments to the plaintiff before the court held a de novo hearing on his motion to modify. The court further found that the parties intended that, following a one year grace period, the defendant was to pay the plaintiff 40 percent of the first $250,000 of his earned income and that each party had the right to seek a de novo review by the court after the one year grace period had expired.

In addition, the court found that the defendant did not come into court with "clean hands." The court reasoned that the defendant had petitioned the court to use its equitable powers to afford him relief by either terminating or modifying his support obligation retroactively, but he decided to substitute his discretion for that of the court in contradiction of the expressed terms of the agreement. The defendant engaged in self-help to reduce his support obligation to $1200, the sum he deemed to be in accord with the child support guidelines of July, 2008. In conclusion, the court determined that the defendant's motion to modify was stale and no longer pending before the court and, therefore, denied the motion to modify.

The court grounded its decision that the motion to modify was stale on Practice Book § 25-34 (e), which provides in relevant part: "Failure to appear and present argument on the date set by the judicial authority shall constitute a waiver of the right to argue unless the judicial authority orders otherwise. Unless for good cause shown, no motion may be reclaimed after a period of three months from the date of filing. . . ." We disagree that § 25-34 (e) is controlling under the circumstances of the present case. Whether the court should have considered the merits of the motion to modify is controlled by the agreement between the parties.

Courts are to interpret a separation agreement incorporated into a dissolution decree pursuant to the general principles governing contract construction. See *Isham* v. *Isham*, 292 Conn. 170, 180, 972 A.2d 228 (2009). "A contract must be construed to effectuate the intent of the parties, which is determined from the language used interpreted in the light of the situation of the parties and the circumstances connected with the transaction. . . . [T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the contract. . . . Where the language of the contract is clear and unambiguous, the contract is to be given effect according to its terms." (Internal quotation

marks omitted.) *Eckert* v. *Eckert*, 285 Conn. 687, 692, 941 A.2d 301 (2008).

The case of *Zahringer* v. *Zahringer*, 124 Conn. App. 672, 6 A.3d 141 (2010), also concerned a separation agreement in which the parties constructed their agreement to provide for a "second look at alimony," any change as a result of which was to be made retroactive to a certain date. Id., 687. This court recognized that in crafting a separation agreement, parties may draft an agreement that deviates from current case law. Id., 688. This court also concluded that the trial court may consider a motion to modify that is heard by the court more than three months after it is filed. In *Zahringer*, the plaintiff's 1999 motion for modification and September, 2003 motion for modification were heard on various days in 2007 and 2008. Id., 689 (retroactive award may take into account long time period between date of filing motion to modify and date motion heard); see also *Olson* v. *Mohammadu*, 310 Conn. 665, 686 n.16, 81 A.3d 215 (2013) (same).

In the present case, § 8.1 of the agreement sets forth the amount of unallocated alimony and child support the defendant was to pay the plaintiff, and the manner in which the amount was to be calculated. Section 8.3 provides, however, that at the time the parties were divorcing, the parties recognized that the defendant was starting a new business and, therefore, incorporated a provision into the agreement to take that circumstance into consideration. Section 8.3 states that "[n]otwithstanding the provisions of Paragraph 8.1, the parties acknowledge that the [defendant] is in the process of starting a new business and that his current earned income is set forth on his financial affidavit. Accordingly, the [defendant] shall pay to the [plaintiff], for a period of one (1) year only, 'minimum payments' of three thousand ($3,000) dollars per month commencing on the first day of the first month after the execution of this Agreement and concluding 12 months thereafter. After the one (1) year period of time has expired, *there shall be a de novo review*, without the necessity to prove a substantial change in circumstances as described in paragraph 8.4, by the Superior Court at Stamford to determine the amount of alimony, if any, to be paid by the [defendant] based upon his then current earned income."[10] (Emphasis added.)

Section 8.4 of the agreement states: "The [defendant] and [plaintiff] *shall have the right* to petition the Superior Court at Stamford, after the one (1) year period as described above without a showing of a substantial change of circumstances, to terminate alimony and order child support only or modify the calculation of the amount of unallocated alimony and child support that shall be paid. . . . In the event the current unallocated support order is terminated and no alimony payments are ordered, the court shall determine the

amount of child support to be paid." (Emphasis added.)

Under the terms of §§ 8.3 and 8.4 of the agreement, the defendant was entitled to file a motion to modify at the end of the first year *and* entitled to receive de novo review by the Superior Court of his unallocated support obligation. The court found that the defendant timely filed the subject motion to modify seeking the permitted de novo review of the amount of unallocated support he was to pay.[11] The plaintiff did not object to the motion to modify. The hearing on the motion did not take place, and the plaintiff instituted discovery regarding the defendant's financial assets. Our review of the court file discloses that discovery continued well into 2009. Even if we were to conclude that Practice Book § 25-34 were controlling, which we do not, there was good cause for the motion not to have been reclaimed within three months of its filing due to ongoing discovery and other issues between the parties. See *Cannon* v. *Cannon*, 109 Conn. App. 844, 851, 953 A.2d 694 (2008) (over three year period more than seventy motions filed, counsel not inattentive to case).

The defendant also claims that the court abused its discretion by denying his motion to modify after finding him guilty of unclean hands. "A trial court may award alimony as part of the court's general equitable power." *Lord* v. *Lord*, 44 Conn. App. 370, 374, 689 A.2d 509, cert. denied, 241 Conn. 913, 696 A.2d 985 (1997), cert. denied, 522 U.S. 1122, 118 S. Ct. 1065, 140 L. Ed. 2d 125 (1998). "[T]he power to act equitably is the keystone to the court's ability to fashion relief in the infinite variety of circumstances that arise out of the dissolution of a marriage. . . . These equitable powers give the court the authority to consider all the circumstances that may be appropriate for a just and equitable resolution of the marital dispute." (Citation omitted; internal quotation marks omitted.) *Porter* v. *Porter*, 61 Conn. App. 791, 797, 769 A.2d 725 (2001).

"[A]pplication of the doctrine of unclean hands rests within the sound discretion of the trial court. . . . The exercise of [such] equitable authority . . . is subject only to limited review on appeal. . . . The only issue on appeal is whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of [the trial court's] action. . . . Whether the trial court properly interpreted the doctrine of unclean hands, however, is a legal question distinct from the trial court's discretionary decision whether to apply it." (Citations omitted; internal quotation marks omitted.) *Thompson* v. *Orcutt*, 257 Conn. 301, 308, 777 A.2d 670 (2001).

"The question of whether the clean hands doctrine may be applied to the facts found by the court is a question of law. . . . We must therefore engage in a

plenary review to determine whether the court's conclusions were legally and logically correct and whether they are supported by the facts appearing in the record." (Citation omitted.) *McKeever* v. *Fiore,* 78 Conn. App. 783, 787–88, 829 A.2d 846 (2003).

"Our jurisprudence has recognized that those seeking equitable redress in our courts must come with clean hands. The doctrine of unclean hands expresses the principle that where a [party] seeks equitable relief, he must show that his conduct has been fair, equitable and honest as to the particular controversy in issue. . . . For a complainant to show that he is entitled to the benefit of equity he must establish that he comes into court with clean hands. . . . The clean hands doctrine is applied not for the protections of the parties but for the protection of the court. . . . It is applied . . . for the advancement of right and justice. . . . The party seeking to invoke the clean hands doctrine to bar equitable relief must show that his opponent engaged in wilful misconduct with regard to the matter in litigation. . . . The trial court enjoys broad discretion in determining whether the promotion of public policy and the preservation of the courts' integrity dictate that the clean hands doctrine be invoked." (Citation omitted; internal quotation marks omitted.) *Ridgefield* v. *Eppoliti Realty Co.,* 71 Conn. App. 321, 334–35, 801 A.2d 902, cert. denied, 261 Conn. 933, 806 A.2d 1070 (2002).

In the present case, each party charged the other with unclean hands. The court found that, although the defendant filed the motion to modify in accordance with the agreement, he had resorted to self-help to modify his support obligation and had been paying the plaintiff what he thought were his child support obligations since July, 2008. The plaintiff, however, did not object to the defendant's motion to modify, but initiated discovery proceedings to examine the defendant's assets. Moreover, although the defendant began to pay the plaintiff only $1200 in July, 2008, the plaintiff never filed a motion for contempt until May, 2012, almost four years later. In the meantime, the defendant settled a lawsuit and paid the plaintiff a large percentage of the proceeds. When the parties appeared before Judge Shay on May 2, 2012, they stipulated as to the amount of money the plaintiff owed the defendant and that the plaintiff should not be found in contempt. The record indicates, therefore, that neither party strictly had adhered to his or her obligations under the agreement. It appears that there is soil on the hands of each of the parties, the defendant's for using self-help and the plaintiff's for sitting on her right to file a motion for contempt for almost four years. For whatever reason, the motion to modify did not come before the Superior Court until May 2, 2012.[12] The defendant, however, took matters into his own hands and began paying the plaintiff $1200 per month beginning in July, 2008. For her part, the plaintiff never filed a motion for contempt to

enforce the agreement until the day after the parties appeared before Judge Shay, who suggested that the defendant's motion to modify was stale. Judge Richards picked up on the staleness issue raised by Judge Shay and found that there was no good cause for the defendant not to have had the motion heard before the March, 2013 hearing. She also concluded that because the defendant had used self-help to reduce his support payments, he had unclean hands. Judge Richards did not address the plaintiff's failure to file a motion for contempt prior to May 3, 2012, or to exercise her own right to ask the Superior Court to perform a de novo review of the defendant's unallocated support obligation. Judge Richards concluded that the motion to modify was stale and denied it.

Pursuant to §§ 8.3 and 8.4 of the agreement, both parties were entitled to a de novo hearing to establish the defendant's support obligation after the first year grace period. In failing to adjudicate the motion to modify pursuant to the agreement, the court failed to afford the parties the benefit of the agreement they had entered into at the time of the dissolution of their marriage, and therefore abused its discretion by denying the motion to modify without considering its merits. We reverse the judgment with respect to the motion to modify and remand the matter to the trial court for further proceedings.

II

The defendant's second claim is that the court abused its discretion by finding him in contempt. We disagree that the court abused its discretion by finding the defendant in contempt but conclude that the sanction imposed constituted an abuse of discretion.

The following facts are relevant to our resolution of the defendant's contempt claim. Judge Richards found that June, 2008, was the last time the defendant had paid the plaintiff $3000 in unallocated support and that he had paid her only $1200 thereafter until the time of the March, 2013 hearing. The defendant also admitted that he had not provided the plaintiff with monthly written calculations as to how he determined the amount of his monthly support obligation, although he acknowledged that the agreement required him to do so. He testified that he had reduced his support payment to $1200 per month because that was all he could afford at the time in light of the income he generated from his one and one-half year old business. The defendant testified that it was not his intent to avoid paying the plaintiff 40 percent of his earned income, but the court found that none of the evidence in the record demonstrated that he ever paid the plaintiff 40 percent of his earned income. The court found that the defendant's testimony was contradicted by the financial evidence in the record and that his testimony was not credible.

The court also found that the defendant had notice of the court's June 13, 2007 order regarding his unallocated support obligation, that the order was clear and unambiguous, and that the defendant had failed to comply with the court's order by unilaterally reducing the support order to $1200 a month commencing in July, 2008, and continuing until the time of the hearing. The court noted that "[o]ur Supreme Court repeatedly has advised parties against engaging in self-help and has stressed that an order must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Culver* v. *Culver*, 127 Conn. App. 236, 242, 17 A.3d 1048, cert. denied, 301 Conn. 929, 23 A.3d 724 (2011).

The court granted the plaintiff's motion for contempt and sanctioned the defendant. Using the formula in § 8.1 of the agreement, the court found that the defendant owed the plaintiff unallocated support for the period from June 1, 2008[13] through September 30, 2012, in the amount of $210,064.80.[14] The court ordered that the defendant immediately pay the plaintiff $30,000 toward the arrearage. Within ten days the defendant was to roll over to the plaintiff the entirety of his individual retirement account that had a present value of approximately $96,521.46, thereby reducing his arrearage to $84,119.34. The court ordered the defendant to pay the plaintiff the remaining arrearage at the expiration of his unallocated alimony and child support obligation, or July 1, 2015, in equal monthly installments of 40 percent of his gross income until the arrearage was paid in full. The defendant also was held responsible for the plaintiff's reasonable attorney's fees and costs.

A

The defendant claims that the court improperly found him in contempt. We disagree.

As previously stated, the defendant paid the plaintiff $3000 per month in unallocated support for one year following the dissolution of the parties' marriage, as required by § 8.3 of the agreement. Prior to the end of the one year grace period, the defendant filed a motion to modify his unallocated support obligation and had it served with a notice of a hearing on the plaintiff. The noticed hearing did not go forward in June, 2008. In July, 2008, the defendant began paying the plaintiff $1200 a month in unallocated support. At the March, 2013 hearing, the defendant testified that he resorted to self-help to reduce his monthly support obligation, claiming that $1200 was all he could afford to pay. The court found the defendant's testimony was not credible and found him to be in contempt for unilaterally reducing his support payments in violation of the agreement and Judge Tierney's dissolution orders.

We begin with the general principles and the standards of review with respect to a trial court's finding

of contempt. "Contempt is a disobedience to the rules and orders of a court which has power to punish for such an offense. . . . A contempt judgment cannot stand when, inter alia, the order a contemnor is held to have violated is vague and indefinite, or when the contemnor, through no fault of his own, was unable to obey the court's order." (Citation omitted; internal quotation marks omitted.) *Parisi* v. *Parisi*, 315 Conn. 370, 379, 107 A.3d 920 (2015). The threshold question, therefore, is "whether the underlying order constituted a court order that was sufficiently clear and unambiguous so as to support a judgment of contempt." (Internal quotation marks omitted.) Id., 380. This inquiry is a legal one subject to de novo review. Id. If we conclude that the underlying order was clear and unambiguous, "we must then determine whether the trial court abused its discretion in issuing, or refusing to issue, a judgment of contempt, which includes a review of the trial court's determination of whether the violation was wilful or excused by a good faith dispute or misunderstanding." (Internal quotation marks omitted.) Id.

At the March, 2013 hearing the defendant claimed, as he does on appeal, that §§ 8.3 and 8.4 of the agreement are ambiguous. The trial court found, however, that the defendant knew and understood his unallocated support obligation, i.e., he was to pay the plaintiff $3000 a month for one year only and that a de novo hearing was to be held before the court for the purpose of modifying, terminating or setting the order. The court also found that the defendant was not confused about what the agreement required of him but "expressed in no uncertain terms that he believed he should not pay the plaintiff any alimony."

On the basis of the evidence presented at the March, 2013 hearing, the court found that the defendant had notice of the court's June 13, 2007 order incorporated in the judgment of dissolution. It also found that the order was clear and unambiguous that the defendant was to pay the plaintiff 40 percent of his earned income up to $250,000 and 35 percent of his earned income capped at $500,000 as unallocated support, except for the one year grace period in which he was required to pay her $3000 a month. The term of the unallocated support was eight years unless otherwise modified or terminated or set by the court at a de novo hearing at the end of the one year grace period, and the defendant was to provide the plaintiff with his monthly calculation of his income. The defendant never provided the plaintiff with monthly calculations as to how he determined his earned income, as required by the agreement. The court, therefore, found that the defendant wilfully failed to comply with the dissolution order by unilaterally reducing his support payment to $1200 a month beginning in June, 2008,[15] and continuing until the time of the hearing. The court found the defendant to be in wilful contempt of Judge Tierney's dissolution order.

"A finding of contempt depends upon the facts and circumstances surrounding it." *Dukes* v. *Durante*, 192 Conn. 207, 228, 471 A.2d 1368 (1984). On the basis of our review of the record and the facts found by the court, we agree that the order was clear and unambiguous, and we conclude that the court did not abuse its discretion when it found the defendant to be in wilful contempt of the dissolution order when he enlisted self-help to reduce his support payments to the plaintiff in July, 2008. "An order of the court must be obeyed until it has been modified or successfully challenged." (Internal quotation marks omitted.) *Eldridge* v. *Eldridge*, 244 Conn. 523, 530, 710 A.2d 757 (1998). Even if the terms of the dissolution order were ambiguous, the appellate courts of this state have held that a party may not resort to self-help. See, e.g., *Sablosky* v. *Sablosky*, 258 Conn. 713, 720, 784 A.2d 890 (2001) ("where there is an ambiguous term in a judgment, a party must seek a clarification upon motion rather than resort to self-help"). The defendant's claim, therefore, fails.

B

The defendant claims that the sanctions ordered by the court constitute an abuse of discretion. We agree. In 2013, when the court calculated the amount of unallocated support the defendant owed the plaintiff, it failed to consider § 8.3 of the agreement and determine de novo the defendant's unallocated support obligation. Moreover, the court failed to find or consider that the parties' son had turned eighteen in 2011.[16]

The defendant's claim requires us to determine whether the court abused its discretion by concluding that the defendant owed the plaintiff a support arrearage of $210,064.80 and whether that conclusion is supported by competent evidence. *Fuller* v. *Fuller*, 119 Conn. App. 105, 115, 987 A.2d 1040, cert. denied, 296 Conn. 904, 992 A.2d 329 (2010). "In a contempt proceeding . . . a trial court has broad discretion to make whole a party who has suffered as a result of another party's failure to comply with the court order." (Internal quotation marks omitted.) *McGuire* v. *McGuire*, 102 Conn. App. 79, 89, 924 A.2d 886 (2007).

"In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action. . . . Appellate review of a trial court's findings of fact is governed by the clearly erroneous standard of review. The trial court's findings are binding on this court unless they are clearly erroneous in light of the evidence and the pleadings in the record as a whole. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence in the record to support it, the reviewing court on the entire evidence is left with the definite and firm conviction

that a mistake has been committed." (Internal quotation marks omitted.) *Buehler* v. *Buehler*, 117 Conn. App. 304, 317–18, 978 A.2d 1141 (2009).

As stated previously, the parties entered into a separation agreement that was incorporated into the judgment of dissolution. The agreement included a provision requiring the defendant to pay the plaintiff unallocated child support and alimony for a term of eight years. Section 8.1 of the agreement sets forth a formula by which the defendant was to calculate his support obligation. Notwithstanding § 8.1, the parties considered that the defendant was starting a new business and agreed to limit his monthly support payments to $3000 per month for one year only. Section 8.3 of the agreement states in relevant part: "After the one (1) year period of time has expired, *there shall be a de novo review*, without the necessity to prove a substantial change in circumstances as described in paragraph 8.4, by the Superior Court at Stamford to determine the amount of alimony, if any, to be paid by the [defendant] based upon his then current earned income." (Emphasis added.)

In the present case, the trial court did not consider that the parties' son turned eighteen in 2011, almost two years prior to the March, 2013 hearing, a factor it was required to consider when allocating the defendant's child support obligation.[17] The court's calculation of the amount of unallocated support the defendant owed the plaintiff was, therefore, incomplete.

As a general rule, appellate courts do not make credibility determinations. "[I]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences from them." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 155, 920 A.2d 236 (2007).

The court determined that the defendant's testimony that he could not afford to pay the plaintiff unallocated support pursuant to the agreement was not credible. Although we may not second-guess the court's credibility determination, we conclude that the court's credibility finding as to the defendant's ability to pay is subject to mathematical scrutiny. The parties recognized that in 2007 the defendant was starting a new business and agreed that for one year, postdissolution, his unallocated support obligation would be $3000 a month. The

defendant paid the plaintiff $3000 a month during the first year for a total of $36,000, which is 40 percent of $90,000. The court found that the defendant's gross income in 2008 was $47,600 and in 2009 it was $85,050. The defendant, therefore, under § 8.1 of the agreement, did not earn enough money in those years to require that he pay the plaintiff $3000 a month. This circumstance calls into question the court's finding that the defendant's testimony was not credible. The parties' agreement perhaps anticipated that the defendant's earnings one year after the divorce might not be substantial when it provided that the parties had the right to ask the court to conduct a de novo review of the circumstances "to determine the amount of alimony, if any, to be paid by the [defendant] based upon his then current earned income." See § 8.3 of the agreement.

In summary, the court improperly denied the defendant's motion to modify, and failed to conduct a de novo review that took into consideration the defendant's financial circumstances at the end of the first year, postdissolution. The court properly found the defendant in contempt for reducing the amount of his unallocated support, but abused its discretion by ordering sanctions pursuant to § 8.1 of the agreement without conducting a de novo review.

The judgment is reversed only as to the denial of the defendant's motion to modify and the imposition of sanctions against him, and the case is remanded for further proceedings in accordance with this opinion. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] The judgment file indicates that the parties were married on May 27, 1990, and that they are the parents of two now adult children. The parties' son was born in 1993 and their daughter was born in 1997.

[2] The portions of the separation agreement that are relevant to the present appeal are §§ 8.1 through 8.4, which state:

"8.1 The [defendant] shall pay to the [plaintiff] as unallocated alimony and child support, on the first day of each month, as follows: [40] percent of his earned income up to [$250,000] per annum, and [35] percent of his earned income from [$250,000] to [$500,000] per annum, whereupon, the amount of alimony shall be capped. The amount of the payments shall be determined by the 'gross earned income' from the preceding month as defined in paragraph 8.6.

"8.2 The unallocated alimony and child support payments shall be made until the first of the following events: the death of the [defendant], the death, remarriage or cohabitation of the [plaintiff] pursuant to section 46b-86 (b) of the Connecticut General Statutes or eight . . . years from the first payment. The term of the alimony shall be non-modifiable by the [defendant] and [plaintiff].

"8.3 Notwithstanding the provisions of Paragraph 8.1, the parties acknowledge that the [defendant] is in the process of starting a new business and that his current earned income is set forth on his financial affidavit. Accordingly, the [defendant] shall pay to the [plaintiff], for a period of one . . . year only, 'minimum payments' of [$3000] per month commencing on the first day of the first month after the execution of this Agreement and concluding [twelve] months thereafter. After the one . . . year period of time has expired, there shall be a de novo review, without the necessity to prove a substantial change in circumstances as described in paragraph 8.4, by the Superior Court at Stamford to determine the amount of alimony, if any, to be paid by the [defendant] based upon his then current earned income.

"8.4 The [defendant] and [plaintiff] shall have the right to petition the

Superior Court at Stamford after the one . . . year period as described above without a showing of a substantial change of circumstances, to terminate alimony and order child support only or modify the calculation of the amount of unallocated alimony and child support that shall be paid. By way of example, if the [defendant's] earned income is $0 to $60,000, either party may petition to have the percentage changed, a fixed dollar amount established, or that a party has a higher earning capacity warranting a higher or lower payment whether by a percentage or a fixed payment or that no alimony be paid. In the event the current unallocated support order is terminated and no alimony payments are ordered, the court shall determine the amount of child support to be paid."

[3] The motion to modify included the names and birth dates of the parties' children.

[4] Between May 12, 2008, and May 2, 2012, the parties filed more than thirty motions related to their children and discovery of the defendant's financial assets.

[5] Under the agreement, the parties reserved the right for repayment of any outstanding children's expenses, including unreimbursed medical expenses, sports and school expenses, and insurance premiums. On May 2, 2013, they stipulated that the plaintiff owed the defendant the "sum of $2072 for the period of April, 2010, through March 31, 2012."

Section 10.10 of the agreement concerns a lawsuit the defendant brought against his former father-in-law, the plaintiff's father. The agreement provided that if the defendant received a settlement of the claim, the plaintiff was to receive 57 percent of the gross settlement, but was to reimburse the defendant for taxes. The parties stipulated that the plaintiff owed the defendant "the sum of $15,539 for taxes on the lawsuit settlement."

The file reflects that the defendant filed a motion for contempt against the plaintiff for failing to pay him for expenses related to the lawsuit against his former father-in-law. The parties stipulated, however, that the plaintiff was not in contempt of the judgment of dissolution orders.

[6] See General Statutes § 46b-86 (a) (retroactive effect of motion to modify).

[7] Judge Shay stated: "The contempt and modification are the arbores, you know, sides of the coin, so to speak. So, they normally go together, I'm normally hearing them on the same day and at the same time. But we got a problem here on this one in that the motion for contempt is not in front of me, but somewhere along the line it's going to come up in front of me or another judge. The motion for modification everybody thought was there is not, in fact, there. So, really there's nothing in front of me today. Nothing. Zero."

[8] Judge Richards filed a corrected memorandum of decision on January 2, 2014, to rectify an oversight in the transcription of her decision. The correction is not relevant to the issues in this appeal.

[9] The attorney's fees awarded to the plaintiff by the court are not an issue in this appeal.

[10] The parties agree that the defendant paid the plaintiff $3000 for twelve months, which totals $36,000. In terms of § 8.1 of the agreement, $36,000 is 40 percent of $90,000.

[11] The defendant had the motion and a notice of hearing served on the plaintiff to preserve his right to retroactive application of the modification of unallocated support, if any, in the court's discretion.

[12] The transcript of the proceeding before Judge Shay and the representations of counsel for the parties on May 2, 2012, and during oral argument before us reveal that postdissolution motions concerning financial orders that appear on the short calendar often are not heard due to insufficient judicial resources.

On May 2, 2013, counsel then representing the plaintiff stated: "This case has been long in the tooth, Your Honor, and we've tried several times to get discovery and to get information from [the defendant]. We've been here on several motions to compel and a motion for sanctions. The court has never reached us, and quite honestly, Your Honor, it got to a point in time where I felt that I was wasting my client's money sitting in short calendar and wouldn't go forward on these motions."

[13] There appears to be an error in the court's calculations as the defendant did not reduce his unallocated support until July, 2008.

[14] The court calculated the amount of unallocated support the defendant owed the plaintiff pursuant to the formula stated in § 8.1 of the agreement, as follows:

"A. June 1, 2008 through December 31, 2008 (gross income of $47,600); 40 [percent] of gross income of $47,600=$19,040 owed, less $8400 (support paid) equals $10,640 owed for 2008.

"B. January 1, 2009 through December 31, 2009 (gross income of $85,050); 40 [percent] of gross income of $85,050=$34,020 owed, less $14,400 (support paid) equals $19,620 owed for 2009.

"C. January 1, 2010 through December 31, 2010 (gross income of $199,052); 40 [percent] of gross income of $199,052=$79,620.80 owed, less $14,400 (support paid) equals $65,220.80 owed for 2010.

"D. January 1, 2011 through December 31, 2011 (gross income of $192,900); 40 [percent] of gross income of $192,900=$77,160 owed, less $14,400 (support paid) equals $62,760 owed for 2011.

"E. January 1, 2012 through September 30, 2012 (gross income of $158,000); 40 [percent] of gross income of $158,000=$63,200 owed, less $10,800 paid equals $52,400 owed for 2012 (through September 30, 2012)."

[15] We note an internal inconsistency in the memorandum of decision as to when the defendant commenced paying the plaintiff $1200 per month, whether it was in June, 2008, or July, 2008.

[16] The motion to modify included the birth dates of the parties' children.

[17] See *Venuti* v. *Venuti*, 185 Conn. 156, 160 n.3, 440 A.2d 878 (1981) (discussing child support when child turns eighteen). "Even though an unallocated order incorporates alimony and child support without delineating specific amounts for each component, the unallocated order, along with other financial orders, necessarily includes a portion attributable to child support in an amount sufficient to satisfy the [child support] guidelines." *Tomlinson* v. *Tomlinson*, 305 Conn. 539, 558, 46 A.3d 112 (2012). "[T]he trial court must first determine what portion of the unallocated order represented the child support component at the time of the dissolution." Id.