******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

KAREN ZILKHA *v.* DAVID ZILKHA
(AC 38006)
(AC 38007)

Lavine, Beach and Bishop, Js.

*Argued May 11—officially released August 9, 2016*

(Appeals from Superior Court, judicial district of
Stamford-Norwalk, Abery-Wetstone, J. [dissolution

judgment]; judicial district of Waterbury, Hon. Lloyd Cutsumpas, judge trial referee [motion to modify; motion to open].)

*Edward N. Lerner*, for the appellant (defendant).

*Opinion*

BISHOP, J. In these two appeals, the defendant, David Zilkha, appeals from the judgment of the trial court denying his motion to modify the court's financial orders and his motion to open, both filed several years following the court's judgment dissolving his marriage to the plaintiff, Karen Zilkha. Because the two appeals arise from the same underlying case, we assess both of them in this combined opinion. We affirm the judgments.[1] In AC 38006, the defendant appeals from the judgment denying his motion to modify the court's financial orders, claiming that the court incorrectly determined that he had not proven that his financial circumstances had substantially changed and that the court was biased against him when it denied his motion. In AC 38007, the defendant appeals from the court's judgment denying his motion to open the dissolution judgment, premised on his claim that he stipulated to the terms of the marital dissolution judgment only under duress.

The following facts and procedural history pertain to both appeals. The parties were married on June 7, 1998. They had two children, both born on February 14, 2001. On August 1, 2003, the plaintiff brought an action for the dissolution of the parties' marriage, which resulted in a stipulated marital dissolution judgment rendered by the court, *Abery-Wetstone, J.*, on May 31, 2005. In this combined opinion, we address the two appeals separately, setting forth relevant facts and procedural history as appropriate.

I

AC 38006

In AC 38006, the defendant claims that the court abused its discretion when it denied his motion to modify the financial orders, entered pursuant to the dissolution judgment. In this regard, he makes two claims: that the court was biased against him and the case, and that the court incorrectly found that his financial circumstances had not adequately changed to warrant a modification of the orders. We are not persuaded.

The following facts and procedural history are relevant to the resolution of this appeal. On the date of the marital dissolution, the court entered financial orders premised on the finding and the parties' stipulation that the defendant had a $250,000 per year earning capacity. On August 26, 2011, the defendant filed a motion to modify the financial orders. In support of this motion, the defendant argued that his financial circumstances had substantially changed from the date of the marital dissolution.

The court, *Hon. Lloyd Cutsumpas*, judge trial referee, held a hearing on the defendant's motion to modify from April 27 to April 30, 2015. On April 28, 2015, after

hearing substantial evidence, Judge Cutsumpas made the following comment: "These parties should have resolved this matter amicably, that's what they should have done. They should realize, well, what's the maximum exposure that I have here? And I think—I mentioned that [it was] about $126,000 . . . no, it's $126,000. They're arguing, spending countless amounts of money getting aggravated, irritated, throwing stones at one another. And if you think I'm impressed with [the plaintiff], you're mistaken, counsel, I'm not impressed with her either. I'm not impressed with either one of these people. One of the pleadings said, [the defendant's] pleading said, more than a million dollars was spent. More than a million dollars on legal fees and . . . costs and therapy, a million dollars? It's a lot of money. These children could have been made a lot more secure than they are now had half of that money been used for their welfare. I've gone too far, counsel, but you may continue if you wish. . . . I would like to get to the next motion if possible."

The defendant did not object to Judge Cutsumpas' remark and did not ask Judge Cutsumpas to recuse himself due to any alleged bias. Instead, the defendant proceeded with his case and the court continued to hear testimony from the defendant and from Michael Ramer, an expert in earning capacity, who opined that the defendant's earning capacity had decreased from $250,000 per year when the dissolution orders were entered to approximately $20,000 per year at the time of his motion to modify. In Ramer's opinion, the decline in the defendant's earning capacity was a result of the deterioration of the defendant's professional reputation. Specifically, Ramer identified the presence of newspaper articles stating that the defendant had wilfully violated financial and federal security laws, was a loose cannon employee, had been associated with insider trading, had lied to authorities, and was responsible for a serious incident of family violence perpetrated against his wife. These factors led Ramer to conclude that the defendant could not be hired in the financial services industry and would never be hired by any corporation that conducts background checks as part of its vetting process. Notwithstanding this testimony, the court denied the defendant's motion to modify. In announcing its decision from the bench, the court stated that it had "listened to the testimony of the parties and the expert witness . . . review[ed] numerous pieces of documentary evidence [and] . . . considered the relevant Practice Book [sections] and case law that concerns a motion to modify financial orders and [found] that there [was] insufficient evidence to constitute a substantial change in circumstances . . . ."

On May 1, 2015, three days following the court's comment about the parties and one day following its denial of the defendant's motion to modify, the defendant filed a motion to disqualify Judge Cutsumpas. The defen-

dant's affidavit attached to that motion alleged that Judge Cutsumpas was biased against him on the basis of his comment on April 28, 2015, which the defendant perceived to be derogatory commentary on his conduct as a party in the case. Likely because the motion to disqualify was filed after the court had issued its ruling, the court did not respond to the motion. Nonetheless, the defendant raised his claim of judicial bias in this appeal as well as his challenge to the court's denial of his motion to modify.

We first address the defendant's claim of judicial bias. On appeal, the defendant attempts to tie the court's ruling on his motion to modify to his perception of judicial bias. In essence, the defendant claims that the court's denial of his motion to modify was invalid because Judge Cutsumpas should have recused himself from hearing the motion. We do not reach the merits of this claim because "[i]t is well settled that courts will not review a claim of judicial bias on appeal unless that claim was properly presented to the trial court through a motion for disqualification or a motion for mistrial. . . . Absent plain error, a claim of judicial bias cannot be reviewed on appeal unless preserved in the trial court." (Citations omitted; internal quotation marks omitted.) *State* v. *McDuffie*, 51 Conn. App. 210, 216, 721 A.2d 142 (1998), cert. denied, 247 Conn. 958, 723 A.2d 814 (1999).

In the case at hand, the defendant did not raise the issue of judicial bias during the trial proceeding when Judge Cutsumpas made the allegedly biased remarks, which was the defendant's obligation to do. *Tate* v. *Safeco Ins. Co. of Illinois*, 157 Conn. App. 432, 451, 116 A.3d 386 (2015); see Practice Book § 1-23. Instead, the defendant waited until after the court had denied his motions before filing his motion to disqualify. By not timely raising his claim of bias, which he could have done orally when the allegedly improper comments were made, he denied the court the opportunity to timely consider and rule on his perception of bias and request for recusal. See *State* v. *Weber*, 6 Conn. App. 407, 413, 505 A.2d 1266, cert. denied, 199 Conn. 810, 508 A.2d 771 (1986).[2] He, therefore, has not timely preserved his claim of bias and we do not consider his claim here. See *Burns* v. *Quinnipiac University*, 120 Conn. App. 311, 316, 991 A.2d 666, cert. denied, 297 Conn. 906, 995 A.2d 634 (2010).

We next review the defendant's claim that the court's denial of his motion to modify was an abuse of discretion. "Our review of a trial court's granting or denial of a motion for modification of [financial orders] is governed by the abuse of discretion standard. . . . In determining whether a trial court has abused its broad discretion in domestic relations matters, we allow every reasonable presumption in favor of the correctness of its action." (Citation omitted; internal quotation marks

omitted.) *Light* v. *Grimes*, 156 Conn. App. 53, 64, 111 A.3d 551 (2015); see *Pace* v. *Pace*, 134 Conn. App. 212, 217–18, 39 A.3d 756 (2012). Additionally, "[a]s a general rule, appellate courts do not make credibility determinations. [I]t is within the province of the trial court, when sitting as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Credibility must be assessed . . . not by reading the cold printed record, but by observing firsthand the witness' conduct, demeanor and attitude. . . . An appellate court must defer to the trier of fact's assessment of credibility because [i]t is the [fact finder] . . . [who has] an opportunity to observe the demeanor of the witnesses and the parties; thus [the fact finder] is best able to judge the credibility of the witnesses and to draw necessary inferences from them." (Internal quotation marks omitted.) *Nuzzi* v. *Nuzzi*, 164 Conn. App. 751, 733, A.3d (2016)

"[General Statutes §] 46b-86 governs the modification or termination of an alimony or support order after the date of a dissolution judgment. When, as in this case, the disputed issue is alimony [or child support] the applicable provision of the statute is § 46b-86 (a), which provides that a final order for alimony may be modified by the trial court upon a showing of a substantial change in the circumstances of either party. . . . Under that statutory provision, the party seeking the modification bears the burden of demonstrating that such a change has occurred. . . . To obtain a modification, the moving party must demonstrate that circumstances have changed since the last court order such that it would be unjust or inequitable to hold either party to it. Because the establishment of changed circumstances is a condition precedent to a party's relief, it is pertinent for the trial court to inquire as to what, if any, new circumstance warrants a modification of the existing order." (Citation omitted; footnote omitted; internal quotation marks omitted.) *Olson* v. *Mohammadu*, 310 Conn. 665, 671–72, 81 A.3d 215 (2013). In addition, to qualify as a substantial change in circumstances, a change or "alleged inability to pay must be excusable and not brought about by the defendant's own fault." (Internal quotation marks omitted.) Id., 674. Thus, a mere " '[i]nability to pay' does not automatically entitle a party to a decrease of [a support] order." *Sanchione* v. *Sanchione*, 173 Conn. 397, 407, 378 A.2d 522 (1977). The moving party must show that the alleged change in circumstances is "excusable and not brought about by the defendant's own fault," such as through the moving party's "own extravagance, neglect, misconduct or other unacceptable reason . . . ." Id.

With these principles in mind, we turn to the defendant's claim that the court erred in denying his motion to modify on the ground that he had failed to show a substantial change in circumstances. To substantiate

this claim, the defendant asserts that his earning capacity had decreased since the time that the dissolution orders were entered, rendering a substantial change in his financial circumstances that made the original financial orders unjust. This assertion is premised on Ramer's opinion that, after the marital dissolution, the defendant's reputation had become so abysmal that he is nearly unemployable, reducing his earning capacity from $250,000 a year, when the financial orders were entered, to $20,000 a year, presently. In assessing this claim, the court did not credit this testimony. Rather, the court found that "there [was] insufficient evidence to constitute a substantial change in circumstances . . . ." Under these circumstances, we conclude that the court did not abuse its discretion in denying the defendant's motion to modify. In concluding that the defendant had presented insufficient evidence of a substantial change in circumstances, the court was free to credit or reject all or part of the testimony given by the defendant and Ramer. On review, we do not reexamine the court's credibility assessments. *Nuzzi* v. *Nuzzi*, supra, 164 Conn. App. 773. Furthermore, it appears from the record that the defendant's alleged decrease in earning capacity, if any, was brought about by his own "fault . . . neglect, misconduct or other unacceptable reason." *Sanchione* v. *Sanchione*, supra, 173 Conn. 407. Specifically, Ramer's expert opinion was predicated on his understanding of the effect of the defendant's multiple wilful violations of federal security laws, as well as his acts of domestic violence. Under these circumstances, the court's conclusion that the defendant had failed to meet his burden to show a substantial change in circumstances that is excusable and not brought about by his own fault was not an abuse of discretion.

## II

## AC 38007

In AC 38007, the defendant challenges the court's denial of his motion to open the dissolution of marriage judgment on two grounds: first, the defendant claims that Judge Cutsumpas improperly failed to recuse himself, and second, the defendant claims that the court abused its discretion by denying his motion to open. He asserts that the evidence adduced at the hearing on his motion to open demonstrated that he was acting under duress when he consented to the terms of the separation agreement underlying the dissolution judgment. With respect to his claim of bias, the defendant argues that the court, during its oral denial of his motion to open, made certain remarks that indicated that it had come to a decision to deny the motion prior to the evidentiary hearing. In support of his claim of duress, the defendant argues that the plaintiff procured his assent to the separation agreement by threatening him with criminal prosecution and with the attendant immigration consequences. We are not persuaded.

The following additional facts and procedural history are relevant to the resolution of this appeal. The parties' marriage was marred by numerous confrontations and disagreements, one of which is relevant to this appeal. In 2004, a verbal argument between the parties escalated to the point that the defendant struck the plaintiff in the face several times. Police responding to this incident observed the plaintiff to have a black eye. On medical examination, she was determined to have suffered a fractured eye orbit and bridge of her nose. Initially, the defendant denied hitting the plaintiff and blamed her injuries on their two children, who were three and one-half years old at the time. He later acknowledged that he had lied in this regard, justifying his lack of truthfulness on the basis that he was not a United States citizen and feared deportation if convicted of a crime. Indeed, as a result of this incident of domestic violence the defendant was criminally charged.

As noted, on May 31, 2005, Judge Abery-Wetstone rendered a judgment of dissolution of the parties' marriage. The judgment of dissolution incorporated by reference the parties' separation agreement, which included a provision regarding the criminal charges then pending against the defendant. Pursuant to the provision, the plaintiff would recommend to the court that the defendant be allowed entry into a pretrial diversionary program, called the family violence program, in lieu of a formal criminal disposition. The agreement also included a provision that the plaintiff would not seek the defendant's incarceration or deportation. It is evident that the parties believed that if the plaintiff supported the defendant's participation in the family violence program, the court would accept him into the program and he would avoid incarceration and the adverse immigration consequences associated with a criminal conviction of a violent crime. Although the plaintiff could recommend that the defendant be allowed to participate in the program, the parties both acknowledged at the marital dissolution hearing that they were aware that the ultimate decision as to whether the defendant would be allowed to participate in the family violence program would be subject to the approval of the prosecutor and the court in that separate criminal proceeding. Following a lengthy canvass during which both parties unequivocally expressed their voluntary assent to the terms of the separation agreement, the court approved the separation agreement and rendered a judgment dissolving their marriage.

Nearly eight years later, on February 15, 2013, the defendant filed a motion to open and set aside the dissolution judgment. The defendant's motion alleged that, during the negotiations regarding the separation agreement, the plaintiff threatened to oppose his entry

into the family violence program if he did not agree to her financial demands. In other words, the defendant argued that the separation agreement was void because his assent to its terms was procured by duress. On April 30, 2015, Judge Cutsumpas, after hearing testimony from the defendant and other witnesses, denied his motion to open. In its oral denial of the defendant's motion, the court stated: "I'm going to issue an order regarding this motion, because I've given this motion a great deal of thought, I had my own research that I did, I had our own clerks to do research for me, I'm very familiar with the specific issues involved in this case and I'm prepared to rule. The court listened to the parties and their witnesses and heard their argument, and I've reviewed all of the relevant exhibits to this motion and I considered the Connecticut Practice Book rules, the pertinent statutory case law and I find that there was insufficient clear and convincing evidence to reopen this ten year old dissolution of marriage judgment on the ground of duress. I find that there was a lack of evidence to open it on any other basis and, even in the fair preponderance of the evidence standard, the court would be hard pressed to reopen this judgment. It is well [settled] in this state and in every other state in the union that stipulations and agreements are judicially favored and will not be lightly set aside. That language is quoted from Connecticut case after case after case, as well as cases from other jurisdictions as well. And to reopen a ten year [old] case that has—that has had this malodorous history here, thousands and thousands of pages, motions, would be highly inappropriate. The parties need to get over their anger at this failed relationship and move—and turn the page on this chapter in their lives and move on and try to parent their children in a rational manner. . . . And now to reopen the judgment after ten years, try to piece together what the financial situations were at that time would be highly inappropriate. Therefore, this court denies the defendant's motion to reopen the judgment . . . ."

On May 1, 2015, the day after the court's denial of the defendant's motion to open, the defendant filed a motion to disqualify Judge Cutsumpas. The defendant's affidavit attached to the motion to disqualify alleged that Judge Cutsumpas was predetermined to deny the motion on the basis of his comment that "to reopen the judgment after ten years, try to piece together what the financial situations were at that time would be highly inappropriate." Although the defendant's motion to disqualify was not ruled on, the defendant raised his claim of judicial bias in this appeal from the denial of his motion to open. On appeal, the defendant challenges the denial of his motion to open on the grounds that the court was biased against the case and that the court's denial of his motion was an abuse of discretion.

As we noted in our discussion of AC 38006, the defendant's claim of judicial bias was not timely raised before

the court and was not accompanied with a motion to reconsider when it was filed after the court had ruled on the defendant's motion. Therefore, for the reasons stated in our discussion of the defendant's indistinguishable claim in AC 38006, we reject consideration of the defendant's claim of judicial bias.[3]

We next turn to the defendant's claim that the court's denial of his motion to open was an abuse of discretion. "Our review of a court's denial of a motion to open . . . is well settled. We do not undertake a plenary review of the merits of a decision of the trial court to grant or to deny a motion to open a judgment. . . . In an appeal from a denial of a motion to open a judgment, our review is limited to the issue of whether the trial court has acted unreasonably and in clear abuse of its discretion. . . . In determining whether the trial court abused its discretion, this court must make every reasonable presumption in favor of its action. . . . The manner in which [this] discretion is exercised will not be disturbed so long as the court could reasonably conclude as it did." (Internal quotation marks omitted.) *Weinstein* v. *Weinstein*, 275 Conn. 671, 685, 882 A.2d 53 (2005). When exercising its discretion on a motion to open, the court may consider "the totality of the circumstances" under which the motion to open is filed; *Percy* v. *Lamar Central Outdoor*, LLC, 147 Conn. App. 815, 819, 83 A.3d 1212, cert. denied, 311 Conn. 932, 87 A.3d 58 (2014); including the passage of time since the entry of the judgment and the failure of the moving party to timely seek to open the judgment. See *Turner* v. *Commissioner of Correction*, 163 Conn. App. 556, 564–65, 134 A.3d 1253 (2016); *Jeudy* v. *Jeudy*, 106 Conn. App. 372, 378, 942 A.2d 476 (2008).

"For a party to demonstrate duress, it must prove [1] a wrongful act or threat [2] that left the victim no reasonable alternative, and [3] to which the victim in fact acceded, and that [4] the resulting transaction was unfair to the victim. . . . The wrongful conduct at issue could take virtually any form, but must induce a fearful state of mind in the other party, which makes it impossible for [the party] to exercise his own free will." (Citation omitted; internal quotation marks omitted.) *Noble* v. *White*, 66 Conn. App. 54, 59, 783 A.2d 1145 (2001). "A motion to open grounded on duress necessarily requires a court to make factual determinations with respect to the elements of duress and, therefore, any allegation of duress must be accompanied by supporting evidence, either documentary or testimonial, on which such factual determinations can rest. . . . Those determinations as to the elements of duress are findings of fact that we will not disturb on appeal unless they are clearly erroneous." (Citation omitted; internal quotation marks omitted.) *In re Travis R.*, 80 Conn. App. 777, 782–83, 838 A.2d 1000, cert. denied, 268 Conn. 904, 845 A.2d 469 (2004). In making those factual determinations, "[i]t is within the province of the trial court,

as the fact finder, to weigh the evidence presented and determine the credibility and effect to be given the evidence. . . . Where testimony is conflicting the trier may choose to believe one version over the other . . . as the probative force of the evidence is for the trier to determine." (Citation omitted; internal quotation marks omitted.) *Briggs* v. *McWeeny*, 260 Conn. 296, 327, 796 A.2d 516 (2002).

In the present case, we are not persuaded that the trial court's denial of the defendant's motion to open was an abuse of discretion. In assessing the motion, the court was entitled to view the defendant's allegation of duress in light of the procedural history of the case; see *Celanese Fiber* v. *Pic Yarns, Inc.*, 184 Conn. 461, 465–66, 440 A.2d 159 (1981); and did so, noting that "to reopen the Judgment after 10 years, try to piece together what the financial situations were at that time would be highly inappropriate." The trial court was aware, from evidence adduced at the hearing, that despite the defendant's current allegation of duress, ten years earlier, when judgment entered, the defendant had affirmatively represented to that court that his assent to the agreement was completely voluntary. The trial court was also aware, from the docket sheets made part of its file, that the defendant had filed multitudinous postjudgment motions; see footnote 2 of this opinion; and had appeared in court on several occasions in conjunction with postjudgment motions. The record is barren of any suggestion that, at any time, either when the separation agreement was entered into or in any of the subsequent court appearances, did the defendant—or his lawyers—raise this claim of duress. Indeed, the record reveals that on February 3 and 4, 2010, the defendant appeared in court to oppose the plaintiff's motion to open the dissolution judgment on the ground that he had committed fraud in negotiating the agreement. See *Zilkha* v. *Zilkha*, 159 Conn. App. 167, 170–71, 123 A.3d 439 (2015). In sum, the record reflects that the defendant had many opportunities in the nearly decade long interval between the date of the marital dissolution judgment and the filing of his motion to open to apprise the court of his belief that the agreement was signed under duress, but failed to do so until the filing of the instant motion. Therefore, the court's denial of the defendant's motion to open, made after the court conducted an evidentiary hearing and considered the parties' lengthy history of postjudgment litigation, was not an abuse of discretion.

The judgments are affirmed.

In this opinion the other judges concurred.

[1] Although the defendant's former spouse, the plaintiff, was a party to the marital dissolution and defended against both motions under review, she has not participated in these appeals.

[2] We note that, even if the defendant had properly preserved his motion to disqualify, keeping in mind that "opinions that judges may form as a result of what they learn in earlier proceedings in the same case 'rarely' constitute the type of bias, or appearance of bias, that requires recusal";

*State* v. *Rizzo*, 303 Conn. 71, 121, 31 A.3d 1094 (2011), cert. denied,    U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012), overruled in part on other grounds by *State* v. *Santiago*, 318 Conn. 1, 140, 122 A.3d 1 (2015); see also id., 125–26; a favorable judgment on that motion would have made no difference in the case. The defendant's motion to disqualify was filed after the court entered final judgments in the case and the defendant did not accompany his motion to disqualify with a motion to reconsider. Under these circumstances, had the defendant's motion been granted, it would not have affected the prior judgment. Additionally, we note that the trial court docket sheet reveals that between the date of the marital dissolution and the hearing on the defendant's motions, the parties, combined, had filed in excess of 290 postjudgment motions. In short, it is no surprise and, indeed, very understandable, that this history of litigiousness and attendant waste of resources could operate to frustrate the court.

[3] We note too, as to the claim of bias and contrary to the defendant's bald assertion, it is evident from the record that the court listened attentively to the defendant's testimony and witnesses prior to determining that the defendant had not met his burden of proving that he had entered into the agreement under duress.